CADEM ET UX. *v.* NANNA ET AL.

[No. 388, September Term, 1965.]

538

*Decided July 21, 1966.*

The cause was argued before HAMMOND, MARBURY, OPPEN-HEIMER and BARNES, JJ., and EVANS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Stedman Prescott, Jr.,* and *John F. Hillyard,* with whom was *Patrick Thomas Moran* on the brief, for the appellants.

*Emmett H. Nanna, Jr.,* with whom was *David F. Grant* on the brief, for the appellees.

BARNES, J., delivered the opinion of the Court.

The Circuit Court for Prince George's County (Bowen, J.), in equity, on July 27, 1965 signed a final decree granting specific performance to Emmett H. Nanna, Jr. (Nanna) and W. L. Benjamin, plaintiffs below and appellees in this Court, contract purchasers of Lot 56 (containing 3.91 acres) in a subdivision in Prince George's County known as Prince Gardens, under a written contract dated July 10, 1963 and signed by Louis E. Cadem and Grace K. Cadem, his wife (the Cadems), owners and sellers of Lot 56, defendants below and appellants here. The Cadems entered a timely appeal from that decree.

The contract of sale dated July 10, 1963 is on a printed form of real estate sales contract. The purchase price of $18,250.00 is typed in and the sale was to be "all cash." The deposit of $500.00 typed in the agreement was stricken out by pen and the figure $1,000.00 inserted with the initials of the parties near this change. The written contract also provided the following:

> "This contract subject to the purchaser obtaining at his own cost and expense R-55 zoning. Purchaser is to apply for this zoning immediately upon the acceptance of this contract and in the event that the zoning is denied this contract shall become null and void and the entire deposit shall be refunded to the purchaser and neither party shall have any further recourse against each other."

Thereafter follows the portion of the printed form for use if the balance of the purchase money is to be secured by a deed of trust (unused because of the cash sale) and then follows in ink, printed by Mr. Cadem, the following (duly initialed by the parties):

> "Contract void if special exception not obtained withwith 120 days from date 7/10/63."

Thereafter five printed portions of the form are set forth, the last one originally as follows:

> "Within 30 days after zoning becomes final and acceptance hereof by the owner, or as soon thereafter

as a report on the title can be secured if promptly ordered, the seller and purchaser are required and agree to make full settlement in accordance with the terms hereof. If the purchaser shall fail so to do, the deposit herein provided for may be forfeited at the option of the seller, in which event the purchaser shall be relieved from further liability hereunder, or without forfeiting the said deposit the seller may avail himself of any legal or equitable rights which he may have under this contract. In the event of the forfeiture of the deposit, the seller shall allow the agent one-half thereof as a compensation for his services to him."

The figure "30" was stricken out by a pen and the figure "10" inserted by Mr. Cadem.

The written contract then provides that the "seller agreed to pay to Prince Georges Properties-Hyattsville Realty Corp. 50/50, his agent, a commission amounting to Ten (10) per cent of sales price * * *", and the entire deposit would be held by Prince Georges Properties, Inc. "until settlement hereunder is made." The Cadems signed the contract as amended by them on July 10, 1963 and Nanna and Benjamin signed it on July 13, 1963.

It is important to note that there is no provision in the written agreement that time is of the essence of the contract.

At the time of the execution of the contract of sale, Lot 56 was zoned R-R (rural residential) which permitted the erection of single family dwellings on lots containing a minimum of 20,000 square feet, or a minimum of 10,000 square feet if the lot is served by water and sewerage. Under the Zoning Ordinance of Prince George's County the rezoning to R-55 would permit the erection of one-family detached residential dwellings on lots containing 5500 square feet.

The Cadems on June 18, 1963, some 22 days prior to their signing of the contract of sale, had signed an "Application for Zoning Map Amendment" as owners of Lot 56. This application petitioned the Board of County Commissioners of Prince George's County, acting as the District Council for the Maryland-Washington Regional District in Prince George's County (the Board), to *amend* the Zoning Map by *reclassifying* Lot

56 from the R-R zone to the R-55 zone. The purchasers, or their agents, filed the rezoning application on July 16, 1963.

The Board set a hearing on the requested rezoning for May 20, 1964. The Cadems attended this hearing as did George A. Leathers, the sales manager for Nanna. The Board on the same day granted the requested rezoning for 3.61 acres of Lot 56 with .30 acres withheld to provide for the rights of way for two streets in accordance with the recommendations of the Park and Planning Commission. A notice of the Board's action of May 20, 1964 was mailed on May 22, 1964.

The purchasers waited for the 30 day period to pass so that the rezoning would become final in the absence of an appeal during that period, and thereafter had the title examined. They then attempted to get in touch with the real estate dealer who had represented the sellers to fix a time for settlement. The real estate agent was ill and his physician advised against communication with him. The Cadems were unavailable during a substantial portion of July and August 1964. The title report was dated September 22, 1964. On September 30, 1964 counsel for the purchasers wrote Mr. Cadem advising that the rezoning was final, the title ready and that settlement would be held on October 9, 1964 at 2:30 p.m. Mr. Cadem was also advised that if the time fixed for settlement was not satisfactory to him, a time agreeable to him would be arranged. Mr. Cadem, after receipt of the letter of September 30, and two or three days prior to October 9, telephoned counsel for Nanna that he was not going through with the settlement. The purchasers filed suit for specific performance of the contract of sale on October 28, 1964 and an order of publication was issued the same day. (The Cadems are residents of the District of Columbia). Thereafter the Cadems employed counsel, who, on November 23, 1964 by registered mail, notified the purchasers of his representation, that the contract of sale allegedly "became void because the special zoning exemption was not obtained within 120 days from date 7/10/63" and that Mr. Cadem intended to place Lot 56 for sale on the open market but "before advertising wants to give you an opportunity to give them an updated offer for purchase within the next five days." An answer to the bill of complaint for specific performance was filed on December 23, 1964.

At the hearing in the lower court, the testimony established that although a special exception under the zoning law could be filed and heard within 90 days, it would not be possible, as a practical matter, to have a rezoning application heard and decided within 120 days from the date of filing the application. It was also established that Mr. Cadem had, prior to the present transaction, purchased a piece of land with another man and had signed an application for a special exception for the use of that property as a nursing home. Evidence was also introduced to show the expenses incurred by the purchasers in connection with the rezoning application of $487.23 for the services of a registered land surveyor, and the cost of the title search of $35.00. Prior to Mr. Cadem's telephone call after he received the letter of September 30, there had been no communication from the Cadems that they did not intend to perform the contract of July 10, 1963. Nanna testified on cross-examination without objection in regard to his understanding of the meaning of the insertion made by Mr. Cadem in regard to the special exception, as follows:

> "I knew Mr. Cadem had inserted that in the contract and I assume he knew what he was writing down when he wrote it; that a Special Exception is a Special Exception to existing zoning and not a reclassification, so I didn't give it a second thought when no Special Exception was applied for. I just assumed that he meant that if we did, in fact, apply for a Special Exception, that the Special Exception would have to be completed in 120 days, which was feasible."

Judge Bowen at the conclusion of the testimony and after hearing the arguments of counsel, rendered an oral opinion in which he concluded that the clause inserted by Mr. Cadem in regard to the special exception was clear and unambiguous, and did not apply to the rezoning application, that time was not of the essence and that the purchasers had acted reasonably and within a reasonable time to effectuate the settlement after the rezoning became final. As we have indicated, he signed a final decree granting specific performance. We agree with his conclusions and will affirm the decree.

The primary rule in the construction and interpretation of contracts is to ascertain and give effect to the intention of the parties to the contract, unless that intention contravenes some settled public policy or a positive rule of law or property.

We have concluded that the words used in the contract of sale are clear and unambiguous and set forth the intention of the parties to the contract.

The words "special exception" are well known in zoning law. They refer to a grant by the zoning administrative body pursuant to the existing provisions of the zoning law and subject to certain guides and standards, of a special use permitted under the provisions of the existing zoning law. See *Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 49 A. 2d 799 (1946), see also *Syosset Holding Corp. v. Schlimm*, 15 Misc. 2d 10, 159 N. Y. S. 2d 88 (N. Y. Sup. Ct., 1956), *modified* 4 A.D.2d 766, 164 N.Y.S. 2d 890 (1957); *Tullo v. Millburn Township*, 54 N.J. Super. 483, 149 A. 2d 620 (1959). See 2 Rathkopf, *The Law of Zoning and Planning*, §§ 54-1 to 54-9. Rezoning or reclassification is, of course, a *change in the existing zoning law itself*, so far as the subject property is concerned. This type of change in the zoning law is governed by quite different provisions of law from those governing the granting of a special exception.

In the contract of July 10, 1963, it is entirely clear that a rezoning of the subject property from the R-R zone to the R-55 zone was contemplated and if not obtained by the purchasers at their own cost and expense, the contract would be void and the $1,000 deposit returned. The settlement date was related in part to the time when "zoning became final" and there was no specific time limit upon when this should occur. The clause added by pen does not relate to zoning or rezoning but to a special exception and this addition did contain a time limitation of 120 days from July 10, 1963. This provision means what it says, in effect, i.e., that if the purchasers applied for a special exception, such a special exception must be obtained within 120 days from July 10, 1963. It is clear to us that this provision did not apply to rezoning but only to a special exception if applied for by the purchasers. Since no special exception was applied for, the 120 day time limitation was never effective.

Inasmuch as the provision is clear and unambiguous resort to the rules of construction applicable if the provision were ambiguous need not be had. However, if it be assumed, *arguendo*, that the provisions were ambiguous, the Cadems receive no help from the applicable rules of construction and the result would be the same.

In the first place, the courts will prefer a construction which will make the contract effective rather than one which will make it illusory or unenforceable. See *Born v. Hammond*, 218 Md. 184, 189, 146 A. 2d 44, 47 (1958).

The uncontradicted evidence in the case at bar indicates that the construction sought for by the sellers would have made it impossible as a practical matter to have completed the rezoning within 120 days from the date of the contract of sale, whereas the construction which Nanna testified was his understanding of the clause in question, would be possible of fulfillment and would make the contract enforceable. The latter construction would therefore be preferred.

Secondly, a contract will be given a reasonable rather than an unreasonable construction. *Baltimore City v. Industrial Electronics, Inc.*, 230 Md. 224, 229, 186 A. 2d 469 (1962).

It seems quite unreasonable to us to construe the words "special exception" as meaning "rezoning" and to require the "rezoning" to be accomplished within a time during which accomplishment was practically impossible.

Thirdly, it is well established that language in a contract prepared and included by one party is to be construed against that party if there is an ambiguity. *Hughes & Co. v. Pioneer Fireproof Door Corp.*, 230 Md. 36, 38, 185 A. 2d 383, 384 (1962).

Mr. Cadem frankly admits that *he* prepared and inserted the clause in question so that it must be construed against the sellers.

Fourthly, the interpretation given by the parties by their acts and conduct indicates that the construction given the added words by the purchasers was correct. *Gallagher's Estate v. Battle*, 209 Md. 592, 604, 122 A. 2d 93, 99 (1956), *cert. denied* 352 U. S. 894, 77 S. Ct. 133, 1 L. Ed. 2d 87 (1956). The attendance by the Cadems at the rezoning hearing which occurred long after the 120 day period had expired and their silence

subsequent to the expiration of the 120 day period and until after the rezoning had been granted and had become final, in regard to their later expressed position that the contract of sale was void at the expiration of the 120 day period, indicates that they interpreted the language as permitting the contract of sale to continue. Mr. Cadem's testimony tending to indicate the contrary was unconvincing and was gravely weakened by the inference arising from his counsel's letter of November 23, 1964 that the possible increase in the value of Lot 56 between the date of the approval of rezoning and the time of settlement had resulted in a retroactive change of mind in regard to the meaning of the clause in question.

In our opinion the chancellor correctly concluded that the purchasers acted with due diligence and there was no unreasonable delay in fixing the time for settlement under the circumstances already set forth. Time was not stated to be of the essence of the contract. As we said in *Chapman v. Thomas*, 211 Md. 102, 108, 126 A. 2d 579, 582 (1956) quoting with approval from *Soehnlein v. Pumphrey*, 183 Md. 334, 338, 37 A. 2d 843, 845 (1944) :

> " 'The accepted doctrine is that in the ordinary case of contract for the sale of land, even though a certain period of time is stipulated for its consummation, equity treats the provision as formal rather than essential, and permits the purchaser who has suffered the period to elapse to make payments after the prescribed date, and to compel performance by the vendor notwithstanding the delay * * *. The doctrine is subject to qualifications, one of the most important of which is that the delay must not be willful and must not have worked any harm to the vendor.' "

In our opinion, there was no willful delay and the sellers have not suffered any harm.

There are facts in the record which might well establish an equitable estoppel against the sellers to assert their construction of the clause in question. However, Judge Bowen did not find it necessary to consider the question of estoppel, nor do

546

we find it necessary in view of our opinion in regard to the other issues in the case.

*Decree affirmed, the appellants to pay the costs.*