584 A.2d 1318

**PEOPLE'S COUNSEL FOR BALTIMORE COUNTY, et al.**

v.

**Nicholas B. MANGIONE, et ux.**

**No. 465, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Feb. 1, 1991.

Peter Max Zimmerman (Phyllis Cole Friedman, on the brief), for appellant, People's Counsel, Towson.

Michael P. Tanczyn, Towson, for appellant, Dulaney Valley Improvement Ass'n, Inc.

Joseph C. Laverghetta, Towson, for appellees.

Argued before BLOOM, KARWACKI and CATHELL, JJ.

CATHELL, Judge.

This is a zoning appeal from the order of the Circuit Court for Baltimore County remanding the case to the Baltimore County Board of Appeals (hereinafter Board).[1] The appellees, Nicholas B. Mangione et ux., requested a special exception for a nursing home and additional variances to permit a parking lot setback and a larger sign than ordinarily permitted. These requests were denied by the zoning commissioner. On appeal to it, the Board, after a hearing *de novo*, also denied the requests. Thereafter, the appellees appealed the Board's decision to the Circuit Court for Baltimore County. Initially, the circuit court affirmed the Board's decision. Thereafter the appellees filed a Motion to Alter or Amend Judgment. The circuit court granted the appellees' motion and remanded the case to the Board for an evidentiary hearing and finding, modifying its prior order. The appellants, People's Counsel for Baltimore County et al., then appealed to this Court.

## The Issues

Whether the Circuit Court for Baltimore County abused its discretion in remanding the case to the Board; and whether the Board acted arbitrarily and capriciously in denying the appellees' request for a special exception to

---

1. The appellees argue that this appeal must be dismissed because the order from which the appeal is taken is not a final appealable order. We disagree. In the recent case of *Hickory Hills Limited Partnership v. Secretary of State of Maryland,* 84 Md.App. 677, 581 A.2d 834 (1990), we clarified which orders of the circuit court remanding a case to the administrative agency are final in cases involving Md. State Gov't Code Ann. § 10–215(e). At oral argument an inference was made that the trial judge may have been construing this matter as an appeal under Sec. 10–215(g) when in fact the appellee is not a state agency included within the ambit of that section. Appellant contends that the appeal to the circuit court was pursuant to the B Rules. We need not determine which set of rules was being applied because under either, the trial court's ruling was a final appealable order. Accordingly, appellee's argument that the case should be dismissed is without merit.

locate a convalescent home in an area zoned for residential use.[2]

## The Holding

For the reasons that follow, we shall hold that the Circuit Court for Baltimore County abused its discretion in remanding the case to the Board, and that the Board did not act arbitrarily and capriciously in denying the appellees' request for a special exception to locate a convalescent home in an area zoned for residential use.

## The Facts

The appellees requested a special exception to build a convalescent home on a four-acre parcel inside a single-family detached home area of Lutherville, Baltimore County, which is zoned for residential use (D.R. 5.5). The appellees also requested variances for a reduced parking lot set back and for a larger sign than ordinarily permitted. The property at issue is located in the part of Lutherville, east of York Road and just north of the Baltimore Beltway York Road exit serving Lutherville–Timonium. The subject property is a full block away from York Road, being parallel to York Road and one block easterly. The York Road corridor in this vicinity is primarily commercial in nature, but the areas to the interior are residential.

On July 9, 1987, the zoning commissioner denied an application for a special exception, and the variances were dismissed as a consequence. The commissioner cited the interior residential location, the comparatively narrow feeder roads, and the limited access to York Road. He found that the proposal would have an unusual adverse impact as compared with other residential zone locations, and that it would be inconsistent with the purposes, spirit, and intent of the zoning scheme. The appellees then appealed to the

---

2. The appellants phrase the issues as:
 1. Whether the Circuit Court Usurped the Function of the Board of Appeals in Reversing its Denial of the Special Exception.
 2. Whether the Judicial Decisionmaking Process was Capricious.

Board pursuant to the Express Powers Act and the Baltimore County Charter.[3] After a lengthy hearing, the Board affirmed the commissioner's decision. The Board concluded:

> In doing so, the Board finds uncommon problems associated with this proposed development at this specific locale. Of particular concern is the size and scope of the proposal. The projected facility houses 260 [240] beds, contained within two large wings. Additionally, a parking area large enough to house 100 vehicles is planned. Unquestionably, the project as proposed would overwhelm and dominate the surrounding landscape. This is particularly relevant in considering this site's location and surrounding community. Although not far from the commercial corridor of York Road, the proposal represents the deepest intrusion into the residential community of Dulaney Valley. The sheer size of the project from a building footprint standpoint would clearly exacerbate an already worsening storm water runoff situation within this community. Further, the Board remains unconvinced that the traffic generated by the home's employees and visitors would not overtax an interior community road system designed to accommodate residential traffic. At its essence, the Board finds as fact that the Petitioner has not met his burden that the proposed use is not detrimental to the health, safety or general welfare of the locality as provided in B.C.Z.R. 502.1.

Upon appellees' appeal, the circuit court, applying the "substantial evidence" test, initially affirmed the Board's decision. After the court's opinion, the appellees filed a Motion to Alter or Amend Judgment. The court granted the appellees' motion and modified its earlier ruling for the following reason: "unrecognized disparity in the pleadings and unresolved question as to what Appellant [appellee] is seeking in terms of the size of the nursing home." Then

---

**3.** *See* Md.Ann.Code art. 25A, § 5(U), (X) and Baltimore County Charter Art. 6.

the court ordered that the case be remanded to the Board for an evidentiary hearing and finding in accordance with its opinion.

I

Abuse of Discretion: The Remand

■ Judge Bishop, writing for this Court in *Alston v. Alston*, 85 Md.App. 176, 582 A.2d 574 (1990), restated the standard of review where an abuse of discretion is alleged:

While the "clearly erroneous" standard applies to the court's findings of fact, the "abuse of discretion" standard applies to the court's determinations of legal questions or conclusions of law based upon its findings of fact. We will not interfere with such determinations without a clear showing of abuse of that discretion. *See Davis v. Davis*, 280 Md. 119, 124–25 [372 A.2d 231] (1977).[4]

We hold that the circuit court's modification and remand to the Board was not warranted. When the court said "unrecognized disparity in the pleadings and unresolved question[s] as to what Appellant [appellee] is seeking in terms of the size of the nursing home," it meant the size of the convalescent home, *i.e.*, 240–bed or 120–bed. The appellees originally had petitioned for a 240–bed facility. Throughout the proceedings before the zoning commissioner and the Board, the project at issue was for a 240–bed facility. After the Board had rendered its decision affirming the commissioner in rejecting a special exception for a 240–bed complex and, after the circuit court's initial affirmance, the appellees asked the circuit court to consider a 120–bed facility.

Our review of the record does not reflect that a petition for a 120–bed facility was ever filed with the administrative zoning agency. The parties have inexplicably failed to include a copy of the original application for a special

---

4. We discuss the standard of review by a trial court of agency decisions in part II, *infra*, of our opinion.

exception as a part of the extract. Neither did they include a copy of the appellee's Petition of Appeal to the circuit court in that extract. They have included in the extract a copy of appellee's Motion to Alter or Amend which appears to state that their petition for special exception had been for "a 120–bed nursing home ..." and indicates that the Board had failed to act on the 120–bed request.

While we do not normally go beyond the extract and examine the record, we chose to do so in this case in light of the apparent inconsistency between what had occurred at the agency and what appellee alleged had occurred in his Motion to Alter or Amend.

We first note that the site plans that are included in the extract as being filed with the application (that is missing), refer to a 240–bed facility. The appellee's Petition of Appeal to the circuit court states that "the application and plat projected a facility housing 240 beds contained within two wings."

A petition of appeal to the circuit court of the decision of an administrative agency is a pleading. Accordingly, appellee was bound by the admission of his pleading. In footnote 4 in *Thomas v. Solis,* 263 Md. 536, 544, 283 A.2d 777 (1971), the Court of Appeals briefly discussed such admissions:

> The very signing of the petition in the instant case would satisfy provision (2) of Article 93, Sec. 1–208. See *Matthews v. Kernewood, Inc.,* 184 Md. 297, 306, 40 A.2d 522 (1945); and *Parker v. Tilghman V. Morgan, Inc.,* 170 Md. 7, 25, 183 A. 224 (1936) for cases which hold that parties are generally bound by allegations or admissions in their pleadings.

In *Matthews v. Kernewood, Inc.,* 184 Md. 297, 306, 40 A.2d 522 (1944), the Court of Appeals held that where an allegation of a violation of a restriction had been made in a pleading, the pleader could not thereafter allege that the violation had not occurred. In discussing admissions in

appellate briefs, that Court in *Van Royen v. Lacey*, 266 Md. 649, 296 A.2d 426 (1972), stated:

> If the appellees honestly believed that a tenancy by the entireties interest were [sic] involved here it is strange they did not raise that contention earlier.... Be that as it may, estoppel by admission or by pleading has long been recognized in this State.... In [*Edes v. Garey*, 46 Md. 24, 41 (1887)], the Court of Exchequer in *Cave v. Mills*, 7 H. & W. 927, was quoted as saying, "A man shall not be allowed to blow hot and cold, to claim at one time and deny at another."

*Van Royen*, at 651–52, 296 A.2d 426. (Citations omitted.) By admitting in his original petition to the circuit court that his application was for 240 beds, appellee was thereafter prohibited from asserting, as he misleadingly did in his Motion to Alter and Amend, that the application was for 120 beds.

We also note that the Zoning Administrator's denial of the application described it as being for "240 beds and three stories" composed of 120 beds for domiciliary care ... and 116 beds for nursing patients.[5] In upholding the Commissioner, the Board of Appeals stated "the Petitioner seeks approval to construct a 240–bed nursing home...."

Appellee, in his opening argument to the circuit court, stated, "The plat that we submitted showed a layout of two buildings ... and showed them to be 240 beds total. Now, we were not before the Zoning Commissioner to obtain permission to build 240 beds. We were only before the Zoning Commissioner to get zoning for a convalescent home." [6]

---

5. An additional four beds were proposed for another use.

6. Appellee disregarded the requirements of Section 502.1 of the County Code which require a special use to "not":

The record reflects that at no time was an application for a 120–bed facility ever filed with the administrative agency. Nor is there any record that the original 240–bed application was downsized by proper amendment. There was, to be sure, testimony that a 120–bed facility would be less objectionable than a 240–bed facility and some indications from that testimony that appellee might accede to a lesser facility, but our review of the record indicates very little more than speculation on that point and nothing that arises to a recognizable request for downsize modification. Furthermore, the Board made no ruling on the feasability of a 120–bed facility. As we shall discuss in this opinion, the circuit court's scope of review is limited in nature—to determine whether the Board's decision was based on "substantial evidence"—which it correctly determined the first time. When it granted the motion to alter and amend, the trial court abused its discretion.

## II

### A. The Law of Special Exceptions

 The term "special exception" refers to a "grant by a zoning administrative body pursuant to existing provisions of zoning law and subject to certain guides and standards of special use permitted under provisions of existing zoning law."[7] *Cadem v. Nanna*, 243 Md. 536, 543, 221 A.2d 703 (1966). It is a part of a comprehensive zoning

---

b. Tend to create congestion in roads...

\* \* \* \* \* \*

d. Tend to overcrowd land and cause undue concentration of population;

e. Interfere with adequate provisions for ... water, sewerage, transportation or other public requirements, conveniences or improvements.

The size and scope of the project are thus relevant considerations. To contend otherwise, as appellee does, is to engage in specious and sophistic reasoning.

7. The regulations applicable in this case are Baltimore County Zoning Regulations (BCZR) 502.1; 1B00.1–2; and 1B01.1C.

plan, sharing the presumption that it is in the interest of the general welfare and is, therefore valid. *Rockville Fuel and Feed Co. v. Board of Appeals of the City of Gaithersburg,* 257 Md. 183, 262 A.2d 499 (1970). It is a use which has been legislatively predetermined to be conditionally compatible with the uses permitted as of right in a particular zone, the condition being that a zoning body must, in each case, decide under specified statutory standards whether presumptive compatibility exists. *Creswell v. Baltimore Aviation Service, Inc.,* 257 Md. 712, 264 A.2d 838 (1970). In sum, special exception is a "valid zoning mechanism that delegates to an administrative board a limited authority to permit enumerated uses which the legislative body has determined can, *prima facie,* properly be allowed in a specified use district, absent any fact or circumstance in a particular case which would change this presumptive finding." *Rockville Fuel,* 257 Md. at 188, 262 A.2d 499. (Citing *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 287, 96 A.2d 261 (1953)).

Most recently, the Court of Appeals, in *Board of County Comm'rs v. Holbrook,* 314 Md. 210, 550 A.2d 664 (1988), reiterated the law of special exceptions. Quoting from *Schultz v. Pritts,* 291 Md. 1, 432 A.2d 1319 (1981), the Court stated:

"The special exception use is a part of the comprehensive zoning plan sharing the presumption that, as such, it is in the interest of the general welfare, and therefore, valid. The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible *absent any fact or circumstance negating the presumption.* The duties given the Board are to judge whether the *neighboring properties in the general neighborhood would be adversely affected* and whether the use in the particular case is in harmony with the general purpose and intent of the plan.

\* \* \* \* \* \*

"The extent of any harm or disturbance to the neighboring area and uses is, of course, material. If the evidence makes the question of harm or disturbance or the question of the disruption of the harmony of the comprehensive plan of zoning fairly debatable, the matter is one for the Board to decide. But if there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special exception use is arbitrary, capricious, and illegal. *Turner v. Hammond,* 270 Md. 41, 54–55, 310 A.2d 543, 550–51 (1973); *Rockville Fuel & Feed Co. v. Board of Appeals of Gaithersburg,* 257 Md. 183, 187–88, 262 A.2d 499, 502 (1970); *Montgomery County v. Merlands Club, Inc.,* 202 Md. 279, 287, 96 A.2d 261, 264 (1953); *Anderson v. Sawyer,* 23 Md.App. 612, 617, 329 A.2d 716, 720 (1974). These standards dictate that if a requested special exception use is properly determined to have an adverse effect upon neighboring properties in the general area, it must be denied."

*Holbrook,* 314 Md. at 216–17, 550 A.2d 664 (quoting *Schultz,* 291 Md. at 11–13, 432 A.2d 1319). (Emphasis in original.) Then, the Court stated, again, quoting from *Schultz,* 291 Md. at 15, 432 A.2d 1319, the requisite adverse impact required to warrant a denial of special exception:

"[A] special exception use has an adverse effect and must be denied when it is determined from the facts and circumstances that the grant of the requested special exception use would result in an adverse effect upon adjoining and surrounding properties unique and different from the adverse effect that would otherwise result from the development of such a special exception use located anywhere within the zone. Thus, these cases establish that the appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is *whether there are facts and circumstances that show that the particular use proposed at the*

*particular location proposed would have any adverse effects above and beyond those inherently associated with such a special exception use irrespective of its location within the zone."*

*Holbrook*, 314 Md. at 217, 550 A.2d 664. (Emphasis in original.)

### B. The Standard of Review

The general standard of judicial review [8] of most administrative factfinding is: "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached; this need not and must not be either judicial fact-finding or a substitution of judicial judgment for agency judgment." [9] *Holbrook*, 314 Md. at 218, 550 A.2d 664 (quoting *Supervisor of Assess. v. Ely*, 272 Md. 77, 84, 321 A.2d 166 (1974)). Specifically, we shall review facts and circumstances upon which the Board could have found that the special exception use and location proposed would cause an adverse effect upon adjoining and surrounding properties unique and different, in kind or degree, than that inherently associated with such a use regardless of its location within the zone. *Holbrook*, 314 Md. at 217–18, 550 A.2d 664. In addition, "if the evidence makes the issue of harm fairly debatable, the matter is one for the Board's

---

**8.** We have heretofore indicated that the trial court abused its discretion in granting the motion to alter and amend.

**9.** It may be otherwise stated as the: "substantial evidence test," which is "whether reasoning minds could reasonably reach that conclusion from facts in the record before the agency, by direct proof, or by permissible inference. If the conclusion could be so reached, then it is based upon substantial evidence, and the court has no power to reject that conclusion." *Toland v. State Bd. of Educ.*, 35 Md.App. 389, 396, 371 A.2d 161 (1977) (quoting *Comm'r, Baltimore City Police Dep't v. Cason*, 34 Md.App. 487, 508, 368 A.2d 1067 (1977)). *See also Snowden v. Mayor and City Council of Baltimore*, 224 Md. 443, 168 A.2d 390 (1961) ("The substantial evidence test 'means that the reviewing court's inquiry is whether on the record the agency could reasonably make the finding....' Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'")

decision, and should not be second-guessed by an appellate court." *Holbrook,* 314 Md. at 218, 550 A.2d 664.

■ In *Snowden v. Mayor and C.C. of Balto.,* 224 Md. 443, 448, 168 A.2d 390 (1961), the Court of Appeals said:
The heart of the fact finding process often is the drawing of inferences from the facts. The administrative agency is the one to whom is committed the drawing of whatever inferences reasonably are to be drawn from the factual evidence. "The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness." [Citation omitted.]

Therefore, we must give due deference to the right of an administrative agency, such as the Baltimore County Board of Appeals, to draw reasonable inferences from the facts and circumstances presented before it. *Holbrook,* 314 Md. at 218, 550 A.2d 664. *See also Ramsay, Scarlett & Co., Inc. v. Comptroller,* 302 Md. 825, 490 A.2d 1296 (1985), and *Comptroller of the Treasury v. World Book Childcraft International, Inc.,* 67 Md.App. 424, 508 A.2d 148 (1986).

### C. The Case *Sub Judice*

■ Before the Board were various facts and circumstances which, we believe, satisfy the *Schultz* standard of particular adverse impact. The Board, under the *Schultz* standard, reviewed the evidence for the required particular adverse impact. There was testimony that the proposed convalescent home would sit on the prominent or dominant terrain above the neighborhood, which would block out light from the west; and with prevailing breezes from the west, would generate odors from the central kitchen as well as from the dumpster. There was testimony concerning the effects of the development along the York Road corridor and the erosion created by the development and storm water runoff. There was testimony concerning the effects of the intrusion of the project into the residential neighborhood presently existing around that location. There was

testimony about small arterial streets whose only access to York Road from the community was by way of Greenridge Road, and that the narrow, winding nature of those streets, with the increased traffic, would jeopardize the safety of the children playing in the streets. Furthermore, there was testimony concerning the overflow of contaminated medical waste and storm water management.

The Board, as finder of fact, said it was "obligated to judge the credibility of each witness and apply each Board member's own knowledge, developed through experience and training, to the evidence presented." In sum, the Board concluded that the proposed project would "overwhelm and dominate the surrounding landscape," and that it would represent "the deepest intrusion into the residential community of Dulaney Valley." The Board found that the project would "clearly exacerbate an already worsening storm water runoff situation" within that community. Further, the Board was unconvinced that the "traffic generated by the home's employees and visitors would not overtax an interior community road system designed to accommodate residential traffic." The Board then held that the appellees failed to meet its burden as provided under B.C.Z.R. Section 502.1.[10]

---

10. That section provides:

Before any Special Exception may be granted, it must appear that the use for which the Special Exception is requested will not:

a. Be detrimental to the health, safety, or general welfare of the locality involved;

b. Tend to create congestion in roads, streets or alleys therein;

c. Create a potential hazard from fire, panic or other dangers;

d. Tend to overcrowd land and cause undue concentration of population;

e. Interfere with adequate provisions for schools, parks, water, sewerage, transportation or other public requirements, conveniences, or improvements;

f. Interfere with adequate light and air;

g. Be inconsistent with the purposes of the property's zoning classification nor in any other way inconsistent with the spirit and intent of these Zoning Regulations; nor

Given those facts and circumstances, we believe there was sufficient showing of particular adverse impact as required under *Schultz*.

## Conclusion

"The duties given the Board are to judge whether the *neighboring properties in the general neighborhood would be adversely affected* and whether the use in the particular case is in harmony with the general purpose and intent of the plan." *Schultz*, 291 Md. at 11, 432 A.2d 1319. (Emphasis in original.) We conclude that the Board's decision, denying the special exception, was not arbitrary and capricious. The trial court's initial opinion was correct. Its subsequent modification was not, and thus was an abuse of discretion.

ORDER OF THE CIRCUIT COURT FOR BALTIMORE COUNTY GRANTING THE MOTION TO ALTER AND/OR AMEND JUDGMENT AND REMANDING THE CASE TO THE BOARD OF APPEALS IS REVERSED; COSTS TO BE PAID BY APPELLEES.[11]

---

h. Be inconsistent with the impermeable surface and vegetative retention provisions of these Zoning Regulations. [Citations omitted.]

11. This case was originally filed as an unreported case. At the time, the mandate inadvertently assessed costs against the prevailing party. We have *sua sponte* corrected the mandate in reporting the case.