675 A.2d 585

**COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY, MARYLAND, Sitting as the District Council**

v.

**BRANDYWINE ENTERPRISES, INC.**

No. 1014, Sept. Term, 1995.

Court of Special Appeals of Maryland.

May 2, 1996.

600

Joyce B. Nichols, Upper Marlboro, for Appellant.

Lawrence N. Taub (Krauser & Taub, P.C., on the brief), Landover, for Appellee.

Argued before DAVIS, MURPHY and HOLLANDER, JJ.

HOLLANDER, Judge.

■ This case concerns the procedural effect of an automatic statutory denial that followed a decision of the Prince George's County Zoning Hearing Examiner ("the Examiner"). Brandywine Enterprises, Inc. ("Brandywine"),[1] appellee, sought a special exception to perform sand and gravel mining in Prince George's County. Following a public hearing, the Examiner recommended approval of the application, subject to certain enumerated conditions. Unhappy with that result, a citizen who resided near the subject area sought review of the Examiner's decision by the Prince George's County Council, sitting as the District Council ("the Council"), appellant.

---

1. Brandywine was formerly known as Brandywine Sand and Gravel Company.

When the Council failed to render a decision within the statutorily specified time, the "application/appeal" was denied by operation of law, pursuant to Prince George's County Code ("P.G."), § 27–132(d)(2)(1991). Thereafter, appellee sought review in the Circuit Court for Prince George's County, which reversed. The Council has appealed that decision and presents the following contentions for our review:

I. The scope of review by this court is limited to determining that the Council's decision was fairly debatable and supported by substantial evidence.

II. The statutory denial is not arbitrary, capricious or discriminatory and was supported by substantial evidence.

### Factual Background

The Brandywine property in issue consists of 75.44 acres, located approximately one mile southeast of the intersection of Aquasco Road (Md. Route 381) and Croom Road (Md. Route 382), in southern Prince George's County ("the Property"). Predominately wooded, the Property is surrounded by farmland to the north and west, undeveloped woodlands and land that is surface mined to the east and south, and single family residences to the northeast. By grant of a 2.2 acre easement through the property of Phillip and Linda Hutton, the main portion of the Property is connected to Aquasco Road by a haul road. The Property is Open Space ("O–S") zoned land,[2] located within the area encompassed by the County's Master Plan for Subregion VI, which was approved in 1973. The Master Plan recommends the removal of the vast sand and gravel deposits in southern Prince George's County, before the land is developed.

On November 14, 1989, Brandywine submitted an application for a special exception, seeking permission to use the Property for surface mining of sand and gravel. On June 11,

---

2. Regional districts in Prince George's County are divided into four "classes of zones:" residential, commercial, industrial, and comprehensive design (a type of "floating" zone). In Prince George's County, an O–S zone is one type of residential class of zone. P.G. § 27–109(a)(1).

1990, the Technical Staff of the Maryland–National Capital Park and Planning Commission ("Planning Commission") issued a Technical Staff Report recommending approval of appellee's application, subject to certain conditions. At the conclusion of a public hearing on July 11, 1990, the Examiner remanded the case to the Prince George's County Planning Board ("the Planning Board"), *de novo,* with instructions to amend appellee's application to include the 2.2 acre easement area.

On May 1, 1991, the Technical Staff of the Planning Commission again recommended approval of appellee's amended application, subject to certain conditions, including those proposed by the Natural Resources Division of the Planning Commission in its July 1990 Environmental Impact Report. On June 6, 1991, the Planning Board held a hearing concerning appellee's application, after which, on June 27, 1991, the Planning Board recommended denial of the application, in Resolution No. 91–202. The Resolution provided, in pertinent part:

> WHEREAS, after consideration of the Technical Staff Report and testimony of its regular meeting on June 6, 1991, the Prince George's County Planning Board disagreed with the staff recommendation; and
>
> WHEREAS, the Planning Board recommendation is based on the following DETERMINATIONS:
>
> A. The traffic generated by this request will adversely affect the surrounding neighborhood due to the already dangerous situation posed by trucks on MD 381.
>
> B. Limited sight distance at the intersection of MD 381 and MD 382 makes the introduction of an additional 300 truck trips on MD 381 a hazard to motorists and pedestrians traversing the intersection.
>
> C. The above traffic concerns are deemed to present such a potential for deleterious impact to the health, safety and welfare of present and future inhabitants of the neighborhood that a denial of the application is warranted.

Thereafter, a hearing was held on July 16, 1991 before the Examiner, at which opponents and proponents of the application testified. On September 22, 1992, the Examiner issued his decision, recommending approval of the application, subject to twenty-six conditions. A document entitled "Notice of Decision," which was included with the Examiner's opinion, stated, in pertinent part:

On the 22nd day of September, 1992, the attached Decision of the Zoning Hearing Examiner in Case No. SE–3967 was filed with the District Council.

*The Zoning Hearing Examiner's decision shall become final 30 calendar days after the above filing date unless:*

*(1) Written appeal within 30 days of the above date is filed\* with the District Council by any person of record or by the People's Zoning Counsel; or*

(2) The District Council directs the case to be transmitted to the Council for final disposition by the Council.

---

\* Instructions regarding *appeals* and oral argument are found on the reverse side of this notice.

The reverse side of the notice provided in pertinent part:

### INSTRUCTIONS FOR FILING

I. *Exceptions Taken to the Examiner's Decision Shall be:*

a) In writing;

b) Numbered in sequence;

c) Specific as to the error(s) which are claimed to have been committed by the Examiner. . . .

d) Specific as to those portions of the record, including the Hearing Examiner's Decision, relied upon to support your allegation of error(s) committed by the Examiner

. . . .

II. *Requests for Oral Argument:*

If you desire oral argument before the District Council, request must be made, in writing, at the time of filing your exception(s).

. . . .

IV. *When to File:*

Your request for oral argument and/or exceptions must be filed *within 30 days after the Examiner's Decision has been filed with the District Council.*

(Italics added; underlining in original).

On January 26, 1993, pursuant to P.G. § 27–131, "exceptions" to the Examiner's decision were noted by Raymond Richards, a resident of Subregion IV. Upon consideration of the exceptions, the Council again remanded the case, *de novo,* to the Technical Staff for the limited issue of revising the inventory as required under P.G. § 27–410(a)(8).[3] After appellee submitted a revised Traffic Impact Report on the basis of the new inventory, another evidentiary hearing was held before the Examiner on January 5, 1994.

On February 1, 1994, the Examiner issued another opinion, again recommending approval of the application, subject to the same twenty-six conditions. In the opinion, the Examiner summarized, at length, the testimony of the many witnesses who appeared in opposition to appellee's application. The Examiner also relied on the preliminary revised master plan for Subregion VI, which reaffirmed the 1973 policy in favor of extracting natural resources from southern Prince George's County. It provides, in pertinent part:

Because sand and gravel are economically important to the County, because they are finite, because the County is the leading resource area in Maryland, and because once these

---

3. P.G. § 27–410(a)(8) provides, in pertinent part:

(8) The Technical Staff Report prepared in response to the application shall include a current, Countywide inventory of the locations, dates of approval, and conditions of approval concerning haul routes and estimated loads per day for all approved and pending Special Exceptions for sand and gravel wet-processing, sanitary landfills and rubble fills, and surface mining as indicated by the record in the case. The inventory shall also include the locations of all nonconforming sand and gravel wet-processing, sanitary landfills and rubble fills, and surface mining operations throughout the County that were certified after September 6, 1974.

sites are developed extraction is permanently precluded, it is recommended that sand and gravel extraction be given priority over more permanent land uses for the immediate future.

In recommending approval of appellee's request for a special exception, the Examiner concluded:

The testimony in the instant case is similar to the testimony which is present in most sand and gravel requests. The case is not unique. All such operations have trucks traveling the roads to and from the mining site and utilize excavation equipment on site. All sand and gravel operations use substantially the same amount and type of equipment and have dust and exhaust that become airborne. The applicant has shown that all potential pollutants are within the accepted governmental standards—even for particularly sensitive individuals. The complaints made by the opposition show no adverse effect upon the neighborhood—the area has been consistently used for sand and gravel mining operations in the past; the existing traffic situation will not be overburdened by the operation; the hours of operation are limited to weekday business hours; the mining operation will operate within the state regulations for noise and state and national standards regarding dust and pollutants; the mining will not affect ground water levels nor pollute the ground water. Any disturbance by this special exception will be routine for sand and gravel mining operations which are permitted by special exception in all residential zones. There is no special characteristic of this neighborhood. Thus, we must follow the guidance of the Court of Special Appeals that unsupported conclusions of lay witnesses that a use would cause traffic problems or noise or pollution are not sufficient to make adverse findings as to those issues. *Mayor and City Council of Baltimore v. Bruce,* 46 Md.App. 704, 420 A.2d 1272 (1980). Opposition's probative evidence of hazardousness at the intersection of Rts. 381 and 382 consists only of one picture taken south of the intersection that is advanced as showing a diminished sight distance from Rt. 382 north to the west on Rt. 381.

This photo is misleading and the remaining opposition photos, as well as applicant's evidence, show that there is adequate sight distance in all directions at the intersection. Further, the evidence is quite clear that considering all the truck traffic on Rts. 381 and 382, both the routes and intersections studied by applicant and staff operate at more than adequate levels. The fact that children wait for school buses along Rt. 381 is no basis for considering the grant to this special exception as adverse to the neighborhood. Children wait for school buses along numerous streets or roads in this County and State ... and have done so since the first rural school bus was put in service. There is nothing different or unique in this case. To say that trucks on the road at the same time create an adverse condition would mean that all trucks must be taken off all such highways, a ludicrous result.... The numerous conditions placed upon this operation have evolved over the years through the hearing process and are routinely placed upon or required of most all sand and gravel mining operations for the protection of the environment and community.

A "Notice of Decision" was attached to the Examiner's decision. It provided, in pertinent part:

On the 1st day of February, 1994, the attached Decision of the Zoning Hearing Examiner in Case No. SE–3967 was filed with the District Council. *This is not the final decision, only the recommendation of the Hearing Examiner to the District Council.*

*Within 30 calendar days after the above date, any person of record may file exceptions with the Clerk of the Council to any portion of this Decision,* and may request oral argument thereon before the District Council.* In the event no exception or request for oral argument is filed with the Clerk of the Council within 30 calendar days from the above date, the District Council may act upon the application and must decide within 120 days *or the case will be considered denied.*

. . . .

* Instructions regarding exceptions and oral argument are found on the reverse side of this notice.[4]

Subsequently, Mr. Richards again filed "exceptions" to the Examiner's decision and, on April 25, 1994, the Council heard oral argument and took the matter under advisement. On May 9, 1994, a motion to approve the application did not pass, but a motion was approved to refer the application for preparation of an Order of Denial. Nevertheless, the Council later failed to obtain the requisite number of votes required to pass the Order of Denial. Consequently, on July 1, 1994, the Council issued a "Notice of Denial," which provided, in pertinent part, as follows:

## NOTICE OF DENIAL

*Pursuant to the provisions of Sec. 27–132(d)(2) of the Zoning Ordinance, a zoning matter shall be considered to have been denied if the District Council fails to render a final decision in accordance with the time limit and voting requirements.*

The above-referenced *application/appeal* appeared on the District Council's agenda for final action on May 24, 1994; *however, the Council was unable to render a final decision.* You are hereby notified that as of July 1, 1994, *said application/appeal is denied by operation of the aforementioned provisions.*

(Italics added).

Appellee then sought review in the circuit court. Appellant asserted, *inter alia,* that the matter before the Council was the *appeal* of the Examiner's decision, not the special exception *application.* Brandywine maintained, therefore, that the automatic statutory denial of the appeal operated to reinstate the Examiner's decision. In contrast, appellant argued that the failure of the Council to render a timely decision resulted

4. The reverse side of the Notice contained the same instructions for filing exceptions that we set forth earlier.

in a denial of the special exception *application.* By order dated May 18, 1995, the circuit court reversed the Council's decision, finding "insufficient evidence in the record to render the Council's decision fairly debatable. . . ." The trial court did not address Brandywine's argument that the Council's inaction served to deny the *appeal,* rather than the special exception *application.* It remanded the case to the Council for further proceedings to approve the special exception, along with any conditions supported by the record.

### Discussion

Appellant now argues that the scope of our review is limited to deciding if the Council's decision to deny the special exception *application* "was fairly debatable and supported by evidence" in the record. In spite of the lack of factual findings and the absence of a written decision explaining the basis for the statutory denial of the application, appellant claims that we must review the record and, if we find substantial evidence in the record to support the Council's decision, we must affirm the Council. In contrast, appellee contends that the Council's "summary denial of [appellee's special exception *application* ], without any findings of fact or conclusions of law," is inconsistent with the legislative policy in favor of approving special exceptions. In the alternative, appellee also asserts that "if anything was decided by the the non-decision of the District Council, it was the *appeal* of the Hearing Examiner's decision, not the entire special exception application." (Underlining in original). Therefore, appellee argues that the Examiner's decision approving the special exception application was the final decision in this case.

At the outset, the precise question with which we are concerned is whether the Council denied the special exception *application* or the *appeal* from the Examiner's decision. As we observed, the Council's "Notice of Denial" stated that the "application/appeal" was denied by operation of law, because "the Council was unable to render a final decision" within the time provided by P.G. § 27–132(d). To the extent that the

Notice said the "application/appeal" was denied, it was ambiguous.

Based on the applicable statutory scheme, however, we believe that it was the *appeal* from the Examiner's decision, rather than the special exception *application*, that constituted the zoning matter pending before the Council.[5] Consequently, the Council's failure to render a timely decision constituted a denial of the *appeal*, but not a denial of the special exception application. As a result, the denial of appellee's appeal did not overrule the Examiner's decision. To the contrary, the denial of the *appeal* had the effect of sustaining the Examiner's decision approving the special exception. We explain.

In Prince George's County, the application procedure for special exceptions is governed by Article 27 of the Prince George's County Code. Pursuant to P.G. §§ 27–126 and 27–127(b), all applications receive a public hearing conducted by an Examiner, who is appointed by the Council. P.G. § 27–127(c) provides:

> After the conclusion of the hearing, the Zoning Hearing Examiner shall prepare and serve upon all persons of record a written decision containing specific findings of basic facts, conclusions of law, and either a recommended disposition of the case, or pursuant to Section 27–312, a final

---

**5.** In *County Council for Prince George's County v. Potomac Electric Power Company*, 263 Md. 159, 282 A.2d 113 (1971), the Court did not consider whether the matter before the Council was the appeal of the Examiner's decision or, instead, the application itself. There, a power company applied for a special exception to erect and maintain an electric substation. After a hearing before the Council, the application was automatically denied after a majority of the commissioners failed to meet the deadline for reaching a final disposition as to the application.

The circuit court remanded the case to the Council, directing the commissioners to state the facts and conclusions of law upon which they relied. After analyzing the material provided by the commissioners following the remand, the circuit court found that the denial was not supported by substantial evidence and reversed the denial of the application. The Court of Appeals affirmed. *Id.*, 263 Md. at 175, 282 A.2d 113.

decision. That decision shall be filed with the District Council at this same time.

Further, P.G. § 27–312 provides, in pertinent part:

(a) The Zoning Hearing Examiner shall have the authority *to approve or deny an application* for Special Exception ... in accordance with the following:

(1) The Zoning Hearing Examiner shall have all the authority, discretion, and power given the District Council in this Part and in Part 3, Division 5, Subdivision 2, in the absence of a provision to the contrary.

*(2) The Zoning Hearing Examiner's decision on an application for Special Exception shall be final thirty (30) days after filing the written decision except:* ·

*(A) Where timely appeal has been made to the District Council pursuant to 27–131;*

. . . .

(C) In any case where, within thirty (30) days after receipt of the Zoning Hearing Examiner's decision, the District Council, upon its own motion and by a majority vote of the full Council, elects to make the final decision on the case itself. . . . [6]

(Italics added).

Appeals from the Examiner's decision are governed by P.G. § 27–131. That section provides, in pertinent part:

(a) **Authorization**

(1) Within thirty (30) days after the Hearing Examiner files his written decision in a zoning case, any person of record or the People's Zoning Council may file with the District Council:

---

**6.** P.G. §§ 27–312(a)(2)(B) and 312(a)(2)(D) also relate to the finality of the Examiner's decision, but these sections are not implicated in this case.

(A) *An appeal from the Zoning Hearing Examiner's decision in a special exception case finally decided by the Zoning Hearing Examiner.*

(B) *Exceptions to the Zoning Hearing Examiner's decision in any other zoning case....*

. . . .

**(c) Time for Council Action**

(1) *The District Council shall consider the exception or appeal at the time it takes final action on the case....*

(Italics added).

The Prince George's County Code further provides that, once an appeal is filed, the Council must render a decision *on the zoning matter* in a timely fashion. P.G. § 27–132(d) states, in pertinent part:

**(d) Time limits on final action**

. . . .

(2) If the District Council fails to render a final decision in accordance with the time limit and voting requirements of this Section, the *zoning matter shall be considered to have been denied,* unless otherwise specified in this Subtitle.

(Italics added).

■ We are mindful that we must read different sections contained in the same statute or regulation in tandem and reconcile their meanings to the extent possible. *Curran v. Price,* 334 Md. 149, 172, 638 A.2d 93 (1994); *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753 (1993); *Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 148, 634 A.2d 28 (1993). As we said in *Barr v. State,* 101 Md.App. 681, 687, 647 A.2d 1293 (1994),

[C]ourts must read all parts of a statute together, with a view toward harmonizing the various parts and avoiding both inconsistencies and senseless results that could not reasonably have been intended by the Legislature.

In light of the principles of statutory construction, it is apparent that, with respect to special exception cases, a challenge in Prince George's County to the Examiner's decision is by way of an *appeal* to the Council. In the absence of an appeal or timely action by the Council on its own motion, an Examiner's decision will become final.[7] Accordingly, if the matter before the Council was the *appeal,* then the "death clause" of P.G. § 27–132(d)(2) operated to deny the *appeal,* not the application. When the appeal is denied, the Examiner's recommendation necessarily remains intact and becomes the final agency decision.

Our conclusion as to the effect of the automatic statutory denial in special exception cases is consistent with State and Prince George's County Code provisions, which require that final dispositions regarding special exception applications must be accompanied by factual findings and legal conclusions. Md. Ann.Code art. 28, § 8–126 provides that, "[i]n Prince George's County, no application for a map amendment or special exception, which is contested, may be granted or denied *except upon written findings of basic facts and written conclusions.*" (Emphasis added). Additionally, P.G. § 27–141(a) states that "[t]he final decision in any zoning case shall be based on the evidence in the record, and *shall be supported by specific written findings of basic facts and conclusions.*" (Emphasis added). Moreover, as we noted, P.G. § 27–127(c) requires that the Examiner *must* "prepare ... a written decision containing *specific findings of basic facts [and] conclusions of law ....*" (Emphasis added). We observe that, if the automatic statutory denial operated to overrule the Examiner's decision, the denial would be unsupported by any factual findings or conclusions of law. Conversely, if the effect of the automatic statutory denial is to deny the appeal, an examiner's decision, which must include factual findings and legal conclusions, remains intact.

---

7. As to other grounds to establish finality, see footnote 6, *supra.*

■■ Our view that a statutory denial in a special exception case results in a denial of the *appeal*, rather than the denial of the *application*, is also in harmony with the legislative policy in favor of approving special exceptions. Special exceptions are uses of land that the Legislature has determined are beneficial for a specific region, provided certain conditions are satisfied. *Mossburg v. Montgomery County*, 107 Md.App. 1, 7–8, 666 A.2d 1253 (1995), *cert. denied*, 341 Md. 649, 672 A.2d 623 (1996). *See also Umerley v. People's Counsel for Baltimore County*, (1996). ("A special exception grants permission to engage in a use that the appropriate legislative authority has sanctioned under certain conditions.") Further, special exceptions are presumptively valid under zoning law. *Schultz v. Pritts*, 291 Md. 1, 11, 432 A.2d 1319 (1981) ("The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature had determined to be permissible *absent any fact or circumstance negating that presumption*.") (Emphasis in original); *People's Counsel for Baltimore County v. Mangione*, 85 Md.App. 738, 747–48, 584 A.2d 1318 (1991). In *Mossburg*, we explained:

> "The term 'special exception' refers to a 'grant by a zoning administrative body pursuant to existing provisions of zoning law and subject to certain guides and standards of special use permitted under provisions of existing zoning law.' *It is part of a comprehensive zoning plan, sharing the presumption that it is in the interest of the general welfare*, and is, therefore valid. It is a use which has been legislatively predetermined to be conditionally compatible with the uses permitted as of right in a particular zone....In sum, a special exception is a 'valid zoning mechanism that ... the legislative body has determined can, *prima facie*, properly be allowed in a specified use district, absent any fact or circumstance in a particular case which would change this presumptive finding.' "

*Id.*, 107 Md.App. at 11, 666 A.2d 1253 (footnotes and citations omitted in original; emphasis in original) (quoting *Mangione*, 85 Md.App. at 747–48, 584 A.2d 1318).

■ To determine whether the presumption in favor of approving a special exception application has been overcome, a zoning body must engage in a case by case factual inquiry concerning the effect of the proposed land use on the surrounding region and its consistency with the policies expressed in the Master Plan governing that region. *Moseman v. County Council of Prince George's County,* 99 Md.App. 258, 263, 636 A.2d 499 (1994); *Schultz,* 291 Md. at 11, 432 A.2d 1319. In *Mangione,* we set forth the applicable standard to evaluate a special exception application:

> The duties given the [zoning body] are to judge whether the *neighboring properties in the general neighborhood would be adversely affected* and whether the use in the particular case is in harmony with the general purpose and intent of the plan.
>
> . . . .
>
> The extent of any harm or disturbance to the neighborhood areas and uses is, of course, material. If the evidence makes the question of harm or disturbance or the question of the disruption of the harmony of the comprehensive plan of the zoning fairly debatable, the matter is one for the [zoning body] to decide. *But if there is no probative evidence of harm or disturbance in light of the nature of the zone involved or of factors causing disharmony to the operation of the comprehensive plan, a denial of an application for a special application is arbitrary, capricious, and illegal.* These standards dictate that if a requested special exception use is properly determined to have an adverse effect upon neighboring properties in the general area, [above and beyond that normally associated with such an exception elsewhere, *Mossburg, supra* ], it must be denied.

*Mangione,* 85 Md.App. at 748–49, 584 A.2d 1318 (emphasis in original; citations and quotations omitted).

■ In view of the presumption in favor of special exceptions, a denial of a special exception *application* must be

supported by factual findings and legal conclusions. But, as we have said, if an automatic statutory denial were construed to result in a denial of the *application*, the Council's decision would be unsupported by factual findings and legal conclusions. On the other hand, a denial of the *appeal* upholds the Examiner's decision, which must be accompanied by factual findings and legal conclusions. P.G. § 27–127(c).

██ We acknowledge that, in *rezoning* cases, automatic statutory denials need not be supported by factual findings and legal conclusions. For example, in *Northampton Corp. v. Prince George's County*, 273 Md. 93, 327 A.2d 774 (1974), the Northhampton Corporation applied for rezoning of certain tracts of land, and the Zoning Hearing Examiner issued a written decision, recommending approval of the zoning changes. When voted upon by the Council, the application failed to receive the required number of votes for approval and was ultimately denied by operation of law after the expiration of the statutory time limit. The Council did not provide a written decision based on its own factual findings and legal conclusions. The Court of Appeals determined that § 59–14 of the Regional District Act,[8] which required that a final zoning decision must be supported by written findings of fact and conclusions of law, was inapplicable. The Court said:

> Under the circumstances of this case, the result which was reached was that mandated by law: that an application not granted within [the time limit] would be regarded as having been denied. No findings of fact or conclusions of law by the district council were required, ... because the application failed of passage as a consequence of inaction by the Council. The only issue before the [trial court] was whether a proper application of the law to the facts before the council produced a result which was neither unreasonable, arbitrary, nor capricious.

*Id.*, 273 Md. at 101, 327 A.2d 774.

Similarly, in *County Council for Prince George's County v. Metro Sites, Inc.*, 86 Md.App. 428, 586 A.2d 834 (1991), we

---

8. This section is now codified at Md. Ann.Code art. 28, § 8–123 (1990).

determined that a statutory denial did not require a written explanation from the agency. There, Metro Sites applied for a change in zoning, and the Zoning Examiner filed a written decision with the District Council, recommending denial of the application. After oral argument, the Council failed to take final action on the matter within the required time limit and, pursuant to P.G. § 27–132, the application was statutorily denied. Again, the Council's order of denial did not include any findings of fact or conclusions of law.

In reviewing the denial, the circuit court observed that it could not determine if the denial of the application was supported by substantial evidence, because the Council failed to provide a written explanation. Therefore, it remanded the case to the Council to prepare factual findings and legal conclusions. Relying on *Northampton,* we found that the statutory denial did not require the Council to make written factual findings and conclusions of law. *Id.,* 86 Md. at 436, 38 A. 932. Accordingly, after determining that the Council's decision was supported by substantial evidence in the record, we reversed the trial court and remanded the case with instructions to affirm the Council's denial of the application. *Id.*

We believe that these cases are distinguishable, because the matters before the Council were the rezoning *applications,* not the appeals, and there is a fundamental difference between a special exception application and a rezoning application. A rezoning lacks the presumption of validity that attaches to a special exception, because a region's original or comprehensive rezoning plan reflects a policy decision of a legislative branch and is assumed to be correct. *Beachwood,* 107 Md.App. at 641, 670 A.2d 484. In *Cadem v. Nanna,* 243 Md. 536, 221 A.2d 703 (1966), the Court of Appeals distinguished special exceptions and rezoning:

> The words "special exception" are well known in zoning law. They refer to a grant by the zoning administrative body pursuant to the existing provisions of the zoning law and subject to certain guides and standards, of a special use permitted under the provisions of the existing zoning law.

Rezoning or reclassification is, of course, a *change in the existing zoning law itself,* so far as the subject property is concerned. This type of change in the zoning law is governed by quite different provisions of law from those governing the granting of a special exception.

*Id.,* 243 Md. at 543, 221 A.2d 703 (emphasis in original).

Moreover, a petition for rezoning or reclassification will be denied unless a party produces strong evidence that the original or comprehensive rezoning plan was predicated upon erroneous evidence or a misapprehension of the existing facts or establishes that the character of the region has significantly changed. *Beachwood,* 107 Md.App. at 639–41, 670 A.2d 484 (citing *Boyce v. Sembly,* 25 Md.App. 43, 50–51, 334 A.2d 137 (1975)). *See also Cardon Investments v. Town of New Market,* 302 Md. 77, 87, 485 A.2d 678 (1984); *Mayor and Council of Rockville v. Stone,* 271 Md. 655, 661, 319 A.2d 536 (1974); *Mack v. Crandell,* 244 Md. 193, 199–200, 223 A.2d 248 (1966); *Buckel v. Board of County Comm'rs of Frederick County,* 80 Md.App. 305, 308, 562 A.2d 1297, *cert. denied,* 318 Md. 96, 566 A.2d 1112 (1989); *Hoy v. Boyd,* 42 Md.App. 527, 533, 401 A.2d 1047 (1979). Describing the burden placed on a party who seeks rezoning classification, we have said:

'It is now firmly established that there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake in the original zoning or comprehensive rezoning or else evidence of substantial change in the character of the neighborhood .... And, of course, the burden of proof facing one seeking a zoning reclassification is quite onerous.'

*Beachwood,* 107 Md.App. at 641, 670 A.2d 484 (omissions in original) (quoting *Wells v. Pierpont,* 253 Md. 554, 557, 253 A.2d 749 (1969)).

Additionally, the general principles that govern judicial review of administrative agency decisions make clear that specific findings of fact and legal conclusions are required to support a grant or denial of special exception applications. So

long as the automatic statutory denial constitutes the denial of the appeal, a reviewing court would be able to review whatever factual findings and conclusions of law were issued by the Examiner.

█ A reviewing court, of course, may not substitute its judgment for that of the agency. *Northwest Land Corp. v. Maryland Dept. of Environment,* 104 Md.App. 471, 487, 656 A.2d 804 (1995); *Cox v. Prince George's County,* 86 Md.App. 179, 186, 586 A.2d 43 (1991). *See also United Parcel Serv. Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 576–77, 650 A.2d 226 (1994). Nor is the reviewing court permitted to engage in judicial fact-finding or otherwise supply factual decisions that were not made by the zoning body. *Ocean Hideaway Condo. v. Boardwalk Plaza,* 68 Md.App. 650, 662, 515 A.2d 485 (1986). *See also Rodriguez v. Prince George's County,* 79 Md.App. 537, 551, 558 A.2d 742, *cert. denied,* 317 Md. 641, 566 A.2d 101 (1989). Moreover, what we said in *Umerley,* is instructive:

[U]nlike our review of a trial court's judgment, we will only uphold the decision of an agency on the basis of the agency's reasons and findings. We may search the record for evidence to support a trial court's judgment; and we may sustain that judgment for a reason plainly appearing on the record, even if the reason was not relied on by the trial court. *But we may not uphold an agency's decision 'unless it is sustainable on the agency's findings and for the reasons stated by the agency.'*

*Id.,* 108 Md.App. at 504, 672 A.2d 173 (emphasis added; quoting *United Steelworkers of America AFL–CIO v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984)). Similarly, in *Mortimer v. Howard Research & Dev. Corp.,* 83 Md.App. 432, 575 A.2d 750, *cert. denied,* 321 Md. 164, 582 A.2d 499 (1990) we stated:

A reviewing court may not . . . uphold an agency's decision if a record of the facts on which the agency acted or a statement of reasons for its action is lacking. Without this reasoned analysis, a reviewing court cannot determine the

basis of the agency's action. If the agency fails to meet this requirement, the agency's decision may be deemed arbitrary. In such an instance, the case should be remanded for the purpose of having the deficiency supplied.

*Id.*, 83 Md.App. at 442–43, 575 A.2d 750.

Applying all of these principles here, we hold that the Council's automatic statutory denial operated as a denial of the appeal, not the special exception application. Consequently, the denial resulted in the affirmance of the Examiner's decision.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.

COSTS TO BE PAID BY APPELLANT.