**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-2150**

ACORN LAND, LLC, d/b/a PCS Homes,

            Plaintiff - Appellant,

        v.

BALTIMORE COUNTY, MARYLAND, A Body Corporate and Politic;
PEOPLE'S COUNSEL FOR BALTIMORE COUNTY,

            Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:09-cv-00422-CCB)

Argued:  May 12, 2010              Decided:  September 21, 2010

Before GREGORY, Circuit Judge, C. Arlen BEAM, Senior Circuit
Judge of the United States Court of Appeals for the Eighth
Circuit, sitting by designation, and Samuel G. WILSON, United
States District Judge for the Western District of Virginia,
sitting by designation.

Affirmed in part, reversed in part, and remanded with
instructions by unpublished per curiam opinion.

**ARGUED:** J. David Breemer, PACIFIC LEGAL FOUNDATION, Sacramento,
California, for Appellant.  James Joseph Nolan, Jr., BALTIMORE
COUNTY OFFICE OF LAW, Towson, Maryland; Peter Max Zimmerman,
Towson, Maryland, for Appellees.  **ON BRIEF:** John E. Beverungen,
County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson,
Maryland, for Appellee Baltimore County, Maryland.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following the Baltimore County Council's (Council) decision to rezone Acorn Land, LLC's (Acorn) property, Acorn filed suit against Baltimore County (County) in Maryland state court. Acorn sought, among other relief, a declaratory judgment that the rezoning constituted an unlawful taking under the United States Constitution and violated Acorn's substantive due process rights. The County removed the case to federal court, where the district court dismissed Acorn's claims as unripe. Acorn now appeals the district court's dismissal of those claims, and we reverse in part and affirm in part.

I.

We accept the well-pleaded facts in Acorn's complaint[1] as true and recite them in the light most favorable to Acorn. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In April 2004, Acorn purchased a tract of land within Baltimore County's Urban-Rural Demarcation Line (URDL) zoned "Density Residential 1" (DR-1).[2] The property is directly adjacent to an

---

[1]Specifically, we "consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference." Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc., 576 F.3d 172, 176 (4th Cir. 2009) (quotation omitted).

[2]Properties zoned DR-1 may accommodate one single family dwelling per acre.

interstate highway and the University of Maryland, Baltimore County Research Park, and is otherwise surrounded by lots containing single family dwellings. Shortly after purchasing the property, Acorn filed a petition to amend the property's water/sewer classification to facilitate residential development. Specifically, the property's then-existing water/sewer classification was W-6/S-6, "Area of Future Consideration,"[3] and Acorn petitioned to amend the classification to W-3/S-3, "Capital Facilities Area."[4] Acorn's petition explained that public water and sewer mains, which existed in close proximity to its property, could easily be extended to serve the property.

Several public agencies reviewed Acorn's petition and all recommended its approval to the Baltimore County Planning Board (Planning Board). In September 2004, after considering these recommendations, the Planning Board likewise recommended to the Council that Acorn's petition be granted. In January 2005, the Council reviewed the Planning Board's water/sewer amendment recommendations for several properties, including Acorn's

---

[3]"Areas of Future Consideration" are areas to be considered in the design of major facilities for growth and development beyond the Land Use Master Plan.

[4]"Capital Facilities Areas" are areas in which water and sewerage facilities are required and possible.

property. Acorn's petition received opposition from citizens as well as state senators and delegates. While the Council adopted the Planning Board's recommendations as to all other properties, the Council, without explanation, took no action on Acorn's petition. As a result, no change was made to the tract's water/sewer classification and Acorn was prevented from proceeding with residential development.

On January 10, 2007, Acorn filed a petition for writ of mandamus in the Circuit Court for Baltimore County to compel the Council to forward the Planning Board's recommendation to amend the property's water/sewer classification to the Maryland Department of the Environment (MDE) for review. On April 7, 2008, the circuit court held that mandamus relief was warranted and ordered the County to forward the Planning Board's recommendation to the MDE. Notably, the court determined that Acorn met Baltimore County's established objective criteria for water/sewer reclassification and that the Council's denial of Acorn's petition was "arbitrary and capricious." The County appealed this decision, and upon the County's motion, the circuit court stayed enforcement of its order pending the appeal.

Meanwhile, in November 2007, after Acorn filed its petition for writ of mandamus, a county councilman filed a petition to

5

rezone Acorn's tract as "Agricultural Protection 2" (RC-2),[5] as part of the County's 2008 Comprehensive Zoning Map Process (CZMP). On April 24, 2008, the Planning Board recommended to the Council that Acorn's tract remain zoned as DR-1. The Council reviewed the Planning Board's recommendation, but nevertheless decided to rezone Acorn's tract as "Rural-Residential" (RC-5).[6] Due to this zoning reclassification, the maximum residential density on Acorn's property was cut in half, and Acorn's water/sewer classification changed from W-6/S-6 to W-7/S-7, "No Planned Community or Multi-Use Service."[7]

On October 8, 2008, following the Council's decision to rezone Acorn's tract, the County dismissed its appeal of the circuit court's mandamus order as moot. In its notice of dismissal, the County explained that, as a result of its reclassification to the RC-5 zone, Acorn's property was subject to a different water/sewer classification and the County could no longer comply with the circuit court's order to forward the

---

[5]Property zoned RC-2 is primarily used to foster and protect agriculture, though limited residential development is permitted.

[6]Under the RC-5 zoning classification, property may be put to agricultural use or may accommodate one single family dwelling per two acres.

[7]Areas classified as "No Planned Community or Multi-Use Service" are areas of planned, low-density growth for which metropolitan water and sewerage facilities are neither planned nor intended.

Planning Board's recommendation to the MDE. Thus, the Council's decision to rezone Acorn's property effectively allowed the County to sidestep the circuit court's order.

Based on the above events, Acorn filed a complaint for declaratory judgment in the Circuit Court for Baltimore County on January 23, 2009, asserting, among other claims, that the Council's actions (1) were "arbitrary and capricious" and violated Acorn's substantive due process rights, and (2) effected an unlawful taking without just compensation in violation of both the Maryland Constitution and the United States Constitution. Upon the County's notice of removal, the suit was removed to the District of Maryland in February 2009, and the federal district court granted the People's Counsel for Baltimore County's motion to join and/or intervene. See Acorn Land, LLC v. Baltimore County, 648 F. Supp. 2d 742, 744 n.1 (D. Md. 2009). The County and the People's Counsel (defendants) filed motions to dismiss.

The district court dismissed Acorn's state constitutional claims because Acorn failed to exhaust applicable state remedies. Then, the district court dismissed Acorn's federal substantive due process and takings claims as unripe due to Acorn's failure to petition the County Board of Appeals to reclassify Acorn's property back to the DR-1 zoning classification. On appeal, Acorn challenges only the district

7

court's dismissal of its federal claims. For the reasons discussed below, we reverse in part and affirm in part.

## II.

Acorn's sole argument on appeal is that the district court erroneously dismissed its as-applied federal takings and substantive due process claims for lack of ripeness. Specifically, Acorn asserts that it need not petition the County Board of Appeals for reclassification to ripen its claims. We review the district court's dismissal for lack of ripeness de novo. Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006).

## A.

First, Acorn's complaint asserts that the Council's zoning decisions constitute a regulatory taking without just compensation in violation of the Fifth Amendment, which applies to states through the Fourteenth Amendment. Chicago, Burlington & Quincy R.R. Co. v. Chicago, 166 U.S. 226, 241 (1897). To present a ripe regulatory takings claim, the plaintiff must demonstrate that: (1) the government entity charged with implementing the regulations in question has issued a "final decision regarding the application of the regulations to the property at issue," and (2) the plaintiff has sought and been denied just compensation through available and adequate state

8

procedures for seeking just compensation. <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 186, 195 (1985). Notably, the Supreme Court has clarified that <u>Williamson</u>'s ripeness prongs are "prudential hurdles," <u>Suitum v. Tahoe Reg'l Planning Agency</u>, 520 U.S. 725, 734 (1997), not jurisdictional requirements. <u>Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.</u>, 130 S. Ct. 2592, 2610 (2010). Here, the only issue properly before this court is whether Acorn satisfied <u>Williamson</u>'s first, "final decision" prong.[8]

As a preliminary matter, we note that <u>Williamson</u>'s final decision requirement is intended to inform the courts' determination of whether a regulation, as applied, constitutes a regulatory taking. As discussed in more detail below, a property regulation constitutes a taking if it goes "too far." <u>Palazzolo v. Rhode Island</u>, 533 U.S. 606, 617 (2001). Simply put, the determination of whether a regulation goes too far

---

[8]The defendants contend that Acorn also failed to satisfy <u>Williamson</u>'s second, "just compensation" prong. However, the defendants did not raise this argument below or in their opening appellate brief. Indeed, it was not until the panel requested the parties to address <u>Williamson</u>'s second prong that the defendants finally pressed this argument. Therefore, because <u>Williamson</u>'s just compensation prong is not a jurisdictional requirement, we deem this argument waived. <u>Beach</u>, 130 S. Ct. at 2610; <u>see also</u> <u>United States v. Jones</u>, 308 F.3d 425, 427 n.1 (4th Cir. 2002) (holding that an argument not raised in the opening appellate brief is waived).

"cannot be resolved in definitive terms" until there is a final decision demonstrating "'the extent of permitted development' on the land in question." Id. at 618 (quoting MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 351 (1986)).

For a developer to obtain a final decision, she must generally submit "a plan for development of [her] property as the ordinances permit," Agins v. City of Tiburon, 447 U.S. 255, 260 (1980), rev'd on other grounds, Lingle v. Chevron U.S.A., Inc. 544 U.S. 528, 532 (2005). Then, "where the regulatory regime offers the possibility of a variance from its facial requirements, [the developer] must go beyond submitting a plan for development and actually seek such a variance to ripen his claim." Suitum, 520 U.S. at 736-37. Consequently, "the final decision requirement is not satisfied when a developer submits, and a land-use authority denies, a grandiose development proposal, leaving open the possibility that lesser uses of the property might be permitted." Palazzolo, 533 U.S. at 619. These general rules support the principle that "a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation." Id. at 620.

That said, there are several notable exceptions to these general rules. First, developers need not engage in futile acts to obtain a final decision. Indeed, the final decision prong is

10

satisfied "once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty." Id. In the same vein, the final decision prong is satisfied where "a zoning agency . . . has dug in its heels and made clear that all . . . applications will be denied." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 349 (2d Cir. 2005). Next, landowners are not required to resort to "repetitive or unfair land-use procedures" to obtain a final decision. Palazzolo, 533 U.S. at 621. And finally, the final decision prong does not require landowners to exhaust administrative remedies.[9] In other words, landowners need not resort to clearly remedial procedures, such as appealing to an administrative board where

---

[9]In Williamson, the Court explained that plaintiffs need not exhaust state administrative remedies to satisfy the final decision prong where their claim is predicated on 42 U.S.C. § 1983. Williamson, 473 U.S. at 192-93. Here, the defendants argue that Acorn must exhaust state administrative remedies because it did not cite § 1983 in its complaint. We disagree. "Federal and state court decisional law is virtually unanimous that a complaint need *not* specifically refer to § 1983, so long as the essential elements of the claim are [pled]." Hill v. North Tex. State Hosp., No. 7:09-CV-158-0, 2010 WL 330209, at *2 (N.D. Tex. Jan. 26, 2010) (emphasis in original); see, e.g., Smith-Berch, Inc. v. Baltimore County, 68 F. Supp. 2d 602, 626 (D. Md. 1999). To state a cause of action under § 1983, a plaintiff must establish "(1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159-60 (4th Cir. 1997). Acorn pled these essential elements.

11

the board is empowered only to review, not participate in, the lower agency's decisionmaking. Williamson, 473 U.S. at 193.

Here, in short, to begin residentially developing its property, Acorn submitted a petition to amend its property's water/sewer classification and the Planning Board recommended its approval. However, after receiving opposition from citizens and state politicians, the Council blocked Acorn's petition, without explanation, through what the Circuit Court of Baltimore County deemed "arbitrary and capricious" conduct. Once the circuit court ordered the Council to forward the Planning Board's recommendation to the MDE, the Council appealed that decision, obtained a stay of enforcement, and then conveniently avoided the circuit court's order by rezoning Acorn's property. The rezoning both cut the property's maximum residential density by half and placed the property in the lowest water/sewer classification.

Based on these well-pled facts, we hold that Acorn satisfied Williamson's final decision prong. To be sure, we acknowledge that Williamson would generally require Acorn to seek a density variance to ripen its claim and that Acorn has not sought such a variance here. However, the Baltimore County Zoning Regulations do not permit an increase in residential density through variance procedures. Indeed, Baltimore County Zoning Regulations section 307.1 provides that the Zoning

12

Commissioner and the County Board of Appeals, upon appeal, may grant height and area variances, but "[n]o increase in residential density beyond that otherwise allowable by the Zoning Regulations shall be permitted as a result of any such grant of a variance."

Moreover, we reject the defendants' argument that petitioning the County Board of Appeals for zoning reclassification is equivalent to seeking a density variance under Williamson and that Acorn must therefore petition for reclassification to ripen its claim. Under Maryland law, "reclassification" or "rezoning" is "a change in the existing zoning law itself, so far as the subject property is concerned," Cadem v. Nanna, 221 A.2d 703, 707 (Md. 1966) (alteration omitted), whereas a variance is "an authorization for [that] . . . which is prohibited by a zoning ordinance." Mueller v. People's Counsel for Baltimore County, 934 A.2d 974, 989 (Md. Ct. Spec. App. 2007) (alterations in original) (quotation omitted). In other words, reclassification applies an entirely different zoning classification to the property in question, whereas the approval/denial of a variance helps define how the property's *existing* zoning classification applies. This distinction is important because, under Williamson, a land-use authority must only have the opportunity "to decide and explain the reach of [the] *challenged regulation*." Palazzolo, 533 U.S.

13

at 620 (emphasis added).  Accordingly, we find that requiring Acorn to petition for reclassification is tantamount to requiring Acorn to exhaust state administrative remedies—a requirement expressly prohibited in Williamson.  Williamson, 473 U.S. at 193.

Lastly, we duly recognize that in some cases, pursuant to fair and reasonable zoning procedures, developers may be required to submit multiple plans, applications, and the like to ripen their takings claims.  See, e.g., id. 473 U.S. at 176-82. Here, however, Acorn was subjected to unfair and unreasonable zoning procedures when the Council blocked Acorn's water/sewer petition, without explanation, after the petition met the County's objective criteria for amending Acorn's property's water/sewer classification.  Indeed, the Circuit Court for Baltimore County went so far as to deem such action "arbitrary and capricious."  Then, once the circuit court ordered the Council to forward the Planning Board's recommendation to the MDE, the Council again effectively denied Acorn water/sewer access by rezoning Acorn's property.  In light of such sophistry, it is clear that the Council has "dug in its heels" and will not allow Acorn to receive necessary access to public water/sewer systems to residentially develop its property. Murphy, 402 F.3d at 349.  Thus, under these circumstances, we conclude that it would be both futile and unfair to require

14

Acorn to jump through any additional administrative hoops to obtain a "final decision." Palazzolo, 533 U.S. at 621 ("Government authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision.").

For the foregoing reasons, we are satisfied that the "permissible uses of [Acorn's] property are known to a reasonable degree of certainty," and Williamson's first prong is satisfied. Id. at 620.

B.

Acorn's complaint also asserts that the Council's zoning decisions were arbitrary and capricious and therefore violated Acorn's substantive due process rights.[10] This claim, like Acorn's regulatory takings claim, is not ripe until the claimant has obtained a final decision from the government entity charged

---

[10]The defendants argue that Acorn's complaint does not sufficiently allege a federal substantive due process claim because Acorn does not cite the Fourteenth Amendment. Like the district court, however, we assume that Acorn relied on both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Maryland's state constitutional equivalent. See Acorn Land, 648 F. Supp. 2d at 747 n.6. After all, Maryland "precedent states clearly that the Maryland and Federal due process provisions have been read 'in pari materia.'" Koshko v. Haining, 921 A.2d 171, 194 n.22 (Md. 2007).

15

with implementing the regulations in question.[11] See Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 96-97 (2d Cir. 1992). Given that Acorn has obtained a final decision from the Council, its substantive due process claim, like its takings claim, is ripe for review.

## III.

On the merits of Acorn's claims, the defendants argue that Acorn's complaint does not state plausible takings or substantive due process claims. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). This "plausibility" standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[11]We note, however, that arbitrary and capricious substantive due process claims are not subject to Williamson's second, "just compensation" prong. Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, 135 F.3d 275, 283 n.3 (4th Cir. 1998); Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 96-97 (2d Cir. 1992).

16

misconduct alleged." Id. We consider the sufficiency of Acorn's claims in turn, beginning with its as-applied takings claim.

A.

"[T]o make out a takings claim, a plaintiff must demonstrate that the government took property without just compensation." Presley v. City of Charlottesville, 464 F.3d 480, 485 (4th Cir. 2006) (alteration omitted). In the regulatory takings context, a property regulation that goes "too far" will be recognized as a taking. Palazzolo, 533 U.S. at 617. Notably, even if a regulation falls short of denying all economically beneficial use of a landowner's property, "a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." Id. (citing Penn Central Transp. Co. v. New York City, 438 U.S. 104, 124 (1978)). This ad hoc, multi-factor inquiry is "informed by the purpose of the Takings Clause, which is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Id. at 617-18 (internal quotation omitted).

17

We find that Acorn has pled facts that plausibly state a regulatory takings claim under the ad hoc, multi-factor test articulated above. First, Acorn's complaint plausibly pleads that the Council's decision to rezone Acorn's property had an adverse economic effect on Acorn. Specifically, Acorn's complaint asserts that the decision, which effectively denied public water/sewer access, prohibited Acorn from residentially developing its property. Acorn also pled that, due to its property's location and size, Acorn's property is not suited for non-development and/or agricultural uses. Finally, Acorn's complaint states that the Council's decision caused $25 million in damages.

Next, Acorn has plausibly pled that the Council's actions interfered with Acorn's reasonable investment-backed expectations. Indeed, the circuit court's decision, which has not been overturned and is incorporated into Acorn's complaint, holds that Acorn met the objective criteria for amending its water/sewer classification and that the Council arbitrarily and capriciously blocked Acorn's petition. Based on the circuit court's order, we find that Acorn has plausibly pled that it had a reasonable investment-backed expectation to residentially develop its property with public water/sewer access. Moreover, we find that Acorn plausibly pled that the Council interfered with this reasonable expectation when it rezoned Acorn's

18

property and denied Acorn's property the public water/sewer access necessary for such development.

Moreover, we find that Acorn has plausibly pled that the character of the Council's actions was inequitable and illegitimate. Indeed, as discussed above, Acorn's complaint notes that the circuit court decided the Council arbitrarily and capriciously blocked Acorn's efforts to amend its water/sewer petition. This fact casts a shadow over the Council's later decision to rezone Acorn's property, which effectively sidestepped the circuit court's order. Thus, Acorn's complaint plausibly pleads that the Council's actions constituted an illegitimate and inequitable attempt to prevent Acorn from developing its property. Cf. Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 165 (4th Cir. 2008) (finding no taking, in part, because the "character of the government action here is both legitimate and equitable").

Finally, Acorn pled that the County has not paid Acorn just compensation for the regulatory taking. Accordingly, we hold that Acorn has sufficiently pled a regulatory takings claim that is plausible on its face.

B.

To make out an arbitrary and capricious substantive due process claim, Acorn must demonstrate "(1) that [it] had

19

property or a property interest; (2) that the state deprived [it] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 827 (4th Cir. 1995) (emphasis in original). Although, as discussed above, we found that Acorn's substantive due process claim is ripe because Acorn obtained a "final decision," we hold that Acorn's complaint does not plead a plausible arbitrary and capricious substantive due process claim.

Assuming *arguendo* that Acorn's complaint sufficiently pleads the first two prongs of an arbitrary and capricious due process claim, Acorn's complaint fails under the third prong because it did not plausibly plead that no state-court process could cure Acorn's injury. Indeed, the "[Due Process] Clause is violated only where the state courts can do nothing to rectify the injury that the state has already arbitrarily inflicted." Love v. Pepersack, 47 F.3d 120, 123 (4th Cir. 1995). Notably, under Maryland law, the state courts possess the authority to strike down zoning decisions that are "arbitrary, capricious, discriminatory or illegal." Trustees of McDonogh Educ. Fund & Institute v. Baltimore County, 158 A.2d 637, 645 (Md. 1960). Acorn's complaint does not assert that seeking such relief in state court would not rectify its injury. Thus, as to Acorn's

20

substantive due process claim, Acorn has failed to state a claim that is plausible on its face.  See Sylvia, 48 F.3d at 829 ("[T]he fact that established state procedures were available to address and correct illegal actions by the [Zoning] Board belies the existence of a substantive due process claim."). Accordingly, we affirm the district court's decision to dismiss this claim, albeit on different grounds.

## IV.

For the foregoing reasons, we affirm in part and reverse in part, and remand for proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART, AND
REMANDED WITH INSTRUCTIONS

21