**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

ALTO ELDORADO PARTNERSHIP;
RANCHO VERANO, LLC;
CIMARRON VILLAGE, LLC;
DENNIS R. BRANCH; JOANN W.
BRANCH,

        Plaintiffs - Appellants,

    v.

THE COUNTY OF SANTA FE,

        Defendant - Appellee,

    and

THE CITY OF SANTA FE,

        Defendant.

No. 09-2214

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 6:08-CV-00175-JB-ACT)**

---

Paul J. Beard II (Damien M. Schiff with him on the briefs), Pacific Legal
Foundation, Sacramento, California, for Plaintiffs-Appellants.

Robert H. Freilich, Esq., Miller Barondess, LLP, Los Angeles, California (Mark
Basham, Esq., Basham & Basham, P.C., Santa Fe, New Mexico, and Stephen
Ross, Esq., Santa Fe County Attorney, Santa Fe, New Mexico, with him on the
brief), for Defendant-Appellee.

---

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.  Introduction

Developers owning property in the County of Santa Fe, New Mexico, ("County") brought a lawsuit challenging as unconstitutional under the Takings Clause an ordinance requiring the provision of affordable housing in new subdivisions.  The district court dismissed the complaint on ripeness grounds and the developers appealed.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **AFFIRMS** the district court's order dismissing the complaint.

## II.  Background

A County ordinance requires developers seeking to subdivide land for resale in designated areas of the County to develop and sell a certain percentage of the lots as affordable housing.  These units, which may amount to as much as thirty percent of a development, must be sold to qualified buyers at prices not to exceed set maximums.  If an affordable housing unit is resold within ten years, the difference between the price paid by the qualified buyer and the resale price is divided between the buyer-reseller and the County.  The County's portions of the proceeds are set aside in a trust fund used for affordable housing.  The ordinance also provides to developers meeting its conditions a waiver of certain development fees and a density bonus, which allows developers to build more

homes in a given area. Developers may seek a waiver of the ordinance's requirements by demonstrating hardship or, in lieu of compliance with the affordable housing requirement, developers may pay a fee to the County. The City of Santa Fe ("City") has a similar ordinance.

Alto Eldorado Partners, Rancho Verano, LLC, Cimarron Village, LLC, (collectively "developers") and two individuals brought suit against both the City and County alleging the ordinances effectuate an unconstitutional taking of property and violate their equal protection and due process rights. They also alleged violations of state law.

The City moved to dismiss the complaint for lack of standing. The district court granted the motion because neither the individual plaintiffs nor the developers alleged ownership of property within the City that would be affected by the city ordinance.

The County moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction because the claims were not ripe for judicial review and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The district court, sua sponte, concluded the two individual plaintiffs did not have standing to sue the County because they failed to allege ownership of property within the County. In contrast, the district court concluded the developers did have standing because they alleged they owned property within the County subject to the ordinance, and their plans to develop those properties were

-3-

impacted by the ordinance. The district court nonetheless dismissed the complaint. It concluded that the developers' Takings Clause claim was not ripe, that the other constitutional claims rested on the same factual foundation and therefore were also unripe, and that the remaining state law claims should be dismissed under the supplemental jurisdiction statute. The individual plaintiffs did not appeal. The developers limit their appeal to the district court's decision that their claims against the County are not ripe.

## III. Standard of Review

Ripeness doctrine is rooted both in the jurisdictional requirement that Article III courts hear only "cases and controversies" and in prudential considerations limiting our jurisdiction. *Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.*, 454 F.3d 1128, 1140 (10th Cir. 2006). This court reviews de novo the district court's order of dismissal premised on lack of ripeness. *Id.*

## IV. Discussion

The Takings Clause of the Fifth Amendment, applied to the States by incorporation through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V; *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). The classic taking is the exercise of eminent domain to appropriate private property. *Lingle*, 544 U.S. at 537. Nevertheless, as recently explained by the Supreme Court, government regulation can also sufficiently interfere with private property rights as to amount

to a taking. *Id.* A regulatory action is deemed to be a taking per se if it requires a permanent physical invasion of private property. *Id.* at 538 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)). A per se taking also occurs if a regulation deprives the owner of all economically beneficial use of the property. *Id.* (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). Even if a regulatory action does not amount to a taking per se, it may still rise to the level of a taking under a multi-factor inquiry outlined in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). *Lingle*, 544 U.S. at 538. The *Penn Central* inquiry focuses on the magnitude of the economic impact of the regulatory action and the extent of the regulation's interference with property rights to determine if the regulatory action constitutes a taking. *Id.* at 540.

Importantly, the Takings Clause does not prohibit the taking of private property for public use, but rather requires compensation when a taking occurs. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). Such compensation does not have to be contemporaneous with the taking, so long as there is an adequate provision for obtaining compensation that exists at the time of the taking. *Id.*

The Supreme Court has outlined a two-prong ripeness test for regulatory Takings Clause claims. First, there must be a final decision about how a regulation will be applied to the property in question, including whether the

implementing administrative body will grant any waiver or variance. *Id.* at 186-91. Second, a property owner may not challenge regulatory action under the Takings Clause until the owner has sought compensation, assuming adequate procedures exist for doing so. *Id.* at 194. Because contemporaneous compensation is not constitutionally required, if the state provides a mechanism for seeking compensation, the property owner must utilize the procedure and be denied just compensation before a takings claim is ripe. *Id.* at 194-95.

The district court noted the County conceded the inapplicability of the first prong of *Williamson County* to facial challenges under the Takings Clause. The County has likewise conceded that point on appeal.[1] As to the second prong of *Williamson County*, it is uncontested that the developers have not sought compensation by bringing an inverse condemnation action under New Mexico state law, N.M. Stat. Ann. § 42A-1-29.

The developers relied on two bases to exempt their claim from the second prong of *Williamson County*: their claim was facial rather than as-applied, and it was an unconstitutional-conditions claim. Although the district court agreed with the developers that their claim as a facial challenge was exempt from the ripeness requirement that they first seek compensation, it nonetheless concluded the claim was unripe because the developers requested injunctive relief, which,

---

[1]In light of this decision, and especially because the parties have not briefed or argued the issue, it is unnecessary to decide whether the first prong applies.

the court decided, is not available where there is an unexplored avenue for compensation. Irrespective of the nature of the remedy sought, however, the claim here is unripe because the developers have not utilized the available state procedure to seek compensation for the alleged taking as required by *Williamson County*.

## A. Facial Takings Clause Challenges

On appeal, the developers again argue their challenge is exempt from both *Williamson County* ripeness requirements because it is a facial challenge. In support of their argument, however, the developers rely primarily on a line of cases now made obsolete by the Supreme Court's recent decision in *Lingle*. In *Lingle*, the Supreme Court considered the validity of challenges brought under the Takings Clause alleging the regulation at issue did not substantially advance a legitimate state interest. 544 U.S. at 545. In concluding the "substantially advances" theory was not appropriate under the Takings Clause, the Supreme Court explained that the Takings Clause merely requires compensation for an otherwise valid governmental interference with private property rights. *Id.* at 543. It does not, in and of itself, provide a cause of action for allegations that the interference with property rights is arbitrary or irrational, a theory that instead resembles a due process claim. *Id.* at 542, 544.

Despite the developers' insistence, the claim the developers bring here under the Takings Clause is not a facial claim challenging the validity of the

regulation itself. That type of claim is properly brought as a due process claim as decided in *Lingle*. Rather, they advance a regulatory takings claim that, as stated in their complaint, the ordinances "do not provide for any compensation for the burdens they place" and thus "constitute an illegal taking of property."[2] The developers' claim here is therefore unlike the facial claims at issue in the cases on which they rely, which concern instead the now-defunct substantially advances claims under the Takings Clause.

*Yee v. City of Escondido*, cited by the developers, is a case in which the property owners used the "substantially advances" theory to allege a regulatory taking. 503 U.S. 519, 534 (1992). Although the Court declined to address the merits of the claim because it was not encompassed within the question presented on certiorari, the Court noted the challenge was not subject to the *Williamson County* requirements. *Id.* at 534, 537. It reasoned that the "substantially advances" claim, a means of challenging the authority of the government to regulate in a certain manner in the first place, did not depend on how the regulation applied to any particular piece of property or whether compensation was available. *See id.* Likewise, in *San Remo Hotel, L.P. v. City & County of*

---

[2]Although it is clear the claim is not a facial claim attacking the validity of the regulatory action, the parties have uniformly referred to this as a facial claim and this court declines to recharacterize it. The sole question presented by the parties is whether the second *Williamson County* requirement applies to the claim. As discussed below, however the claim at issue here is labeled, there is no support for waiving the second *Williamson County* requirement in this case.

*San Francisco*, the Supreme Court stated the plaintiffs would not have had to ripen their facial challenges to a regulation based on the "substantially advances" theory to bring the action in federal court, with the immediate caveat that the theory had been rejected as a takings claim by *Lingle*. 545 U.S. 323, 340 n.23, 346 & n.25 (2005). Although these cases suggest facial challenges are not subject to the same ripeness requirements, those facial challenges are no longer available under the Takings Clause.

The "substantially advances" takings theory, now obsolete, differs dramatically from a Takings Clause claim alleging that a legislative or regulatory action, while advancing an authorized purpose, effectuates a taking of property without just compensation. The former, a claim that governmental interference with property rights exceeds its permissible scope of authority, does not depend on whether the landowner subject to the regulation has been compensated; the regulatory action is invalid whether compensation is provided or not.[3] *See Lingle*, 544 U.S. at 543. Because no amount of compensation would alter the outcome of

---

[3]There is a similarity in this respect between the now-obsolete "substantially advances" challenges and valid Takings Clause claims alleging the taking was not for "public use." In "public use" Takings Clause challenges no amount of compensation would render the taking constitutional because it was in excess of the government's authority to take private property. In the public use context, courts also have not applied the requirement that the plaintiff first seek compensation before bringing suit, decisions that support the distinction we draw today. *See Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno*, 604 F.3d 7, 16 (1st Cir. 2010) (collecting cases). The developers have made no claim that the provision of affordable housing is not a proper public use for which the taking of private property is authorized.

such a claim, a waiver of the *Williamson County* requirement that the plaintiff first seek compensation before mounting a no-longer-available "substantially advances" Takings Clause challenge is appropriate.

In contrast, an otherwise proper interference with property rights amounting to a regulatory taking, whether under *Lucas*, *Loretto*, or *Penn Central*, is constitutional so long as compensation is provided.  Compensation negates the constitutional Takings Clause claim altogether.  *See Williamson County*, 473 U.S. at 194.  A plaintiff might argue the *Williamson County* requirement is met if a regulation on its face makes compensation unavailable or if compensation can be presumed unavailable by the nature of the regulation.  *See, e.g., Eastern Enterprises v. Apfel*, 524 U.S. 498, 521 (1998) (plurality) (presuming compensation unavailable where challenged Act required direct transfer of funds). In other cases, plaintiffs may be able to demonstrate that the state has provided no procedure for seeking compensation.  *See Williamson County*, 473 U.S. at 195. Unless a method for seeking compensation is unavailable or compensation is otherwise foreclosed, however, property owners will only be able to show compensation has been denied after first seeking compensation through an available procedure.

The developers fare no better in their reliance on the post-*Lingle* cases in other circuits.  The Fourth Circuit's decision in *Holliday Amusement Co. of Charleston v. South Carolina*, 493 F.3d 404 (4th Cir. 2007), instead supports this

court's decision today. There, the court notes that a facial challenge alleging a regulatory action exceeds permissible authority is immediately ripe. *Id.* at 407. It goes on to conclude, however, that the plaintiff's claim is not a facial claim that regulatory action exceeds permissible scope, but rather, just like the claim at issue here, is a regulatory takings claim. *See id.* Accordingly, it applied the second *Williamson County* requirement. *Id.*

The developers' argument is likewise not supported by the decisions they cite from the First or Seventh Circuits. The First Circuit, in *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarz*, stated facial claims are exempt from the requirement that plaintiffs first seek compensation, but relied on cases brought under the "substantially advances" theory. 484 F.3d 1, 13-14 (1st Cir. 2007). The First Circuit went on to analyze whether the plaintiff's claim was ripe under *Williamson County* anyway, and concluded the plaintiff had met the compensation requirement by demonstrating there was no adequate procedure aimed at providing compensation. *Id.* at 16-17. This approach merely reflects the unremarkable proposition that the second prong for ripeness under *Williamson County* is inapplicable if a procedure for compensation is not available or compensation is otherwise foreclosed. 473 U.S. at 195. Thus, *Asociacion*, provides little support for the proposition that the second *Williamson County* requirement is inapplicable to the claim at issue here. The Seventh Circuit's statements concerning facial challenges in its *Peters v.*

-11-

*Village of Clifton* decision are similarly dicta, and the court there concludes the plaintiff actually was subject to the *Williamson County* requirement that he first seek compensation. *See* 498 F.3d 727, 732-33 (7th Cir. 2007).

Courts considering claims alleging a regulatory taking without just compensation, even when characterized as facial claims, have applied the second *Williamson County* requirement consistent with this court's decision today. In *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, the Ninth Circuit considered a challenge to a city ordinance as a taking without just compensation. 548 F.3d 1184, 1186 (9th Cir. 2008). The court applied the requirement to seek compensation if procedures are available to claims labeled both as facial and as-applied challenges, although it concluded that because no available procedure for seeking compensation existed, the plaintiff was excused from the requirement as to its facial claim. *Id.* at 1190 & n.13, 1193 (9th Cir. 2008). The Third Circuit has likewise held that plaintiffs alleging a taking without just compensation, although framed as a facial challenge, are not excused from the *Williamson County* requirement that they seek compensation prior to bringing suit. *County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 164-65 (3d Cir. 2006).

Thus, a plaintiff mounting a challenge to a regulation alleging a taking without just compensation is required to meet the second *Williamson County* requirement before bringing suit either by demonstrating a procedure for seeking compensation is unavailable or by first seeking compensation. That such

-12-

challenges are accordingly difficult to bring merely reflects the basic framework of the Takings Clause under which claims are inextricably tied to the question of compensation. *See Lingle*, 544 U.S. at 544. Here, the developers have not argued compensation procedures are unavailable, and it is undisputed they have not brought an inverse condemnation action in state court. They have thus not met the ripeness requirements of *Williamson County*.

**B.  *Nollan-Dolan* Doctrine**

The developers assert an alternate basis for a facial challenge based on the Supreme Court decisions in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). They further argue the litigants in those cases, by the nature of their claims, were sheltered from the second *Williamson County* ripeness requirement and the claims at issue here fall within that exception.

In *Nollan* and *Dolan*, the Supreme Court considered whether the state could appropriate without compensation easements that otherwise would constitute takings per se as a condition for granting development permits to the landowners. *Lingle*, 544 U.S. at 546-47. The Court held such an appropriation without compensation was constitutional so long as it substantially advanced the same interest that would be grounds for denying the development permit outright. *Id.* at 547.

The developers argue that *Nollan* and *Dolan* limit the power of the state to interfere with property rights regardless of compensation by requiring permitting exactions to "substantially advance" the same interest that would allow denial of the permit. According to the developers, *Nollan* and *Dolan* thus authorize facial challenges seeking to invalidate an alleged taking when the taking arises in the context of a permitting requirement, akin to the now-defunct "substantially advances" theory previously available to challenge any regulatory taking.

In both *Nollan* and *Dolan*, the alleged taking was a permanent physical invasion of private property, a type of taking designated as a taking per se and not subject to the *Penn Central* analysis. *Lingle*, 544 U.S. at 546. This court has described the *Nollan-Dolan* land-use exaction claims as a "sub-category" of physical per se takings. *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1208 (10th Cir. 2009). In both cases, the permanent physical invasion was an easement granting public way through private property. *Dolan*, 512 U.S. at 379-80; *Nollan*, 483 U.S. at 828. The developers' claim in this case does not fall within *Nollan* and *Dolan* for this reason alone: the regulatory action amounts to a restriction on how the developers may use their land should they choose to subdivide it or, in the alternative, the imposition of a fee.[4] These interferences with property rights

---

[4]The developers fare no better in their contention, raised for the first time at oral argument, that the regulation amounts to a physical taking per se because it requires the developers to convey portions of the land to certain buyers designated by the County. The affordable housing requirement is unlike physical

(continued...)

-14-

do not constitute physical per se takings. *See United States v. Sperry Corp.*, 493 U.S. 52, 62 n.9 (1989) (noting that requiring payment of money, which is fungible property, cannot be considered a physical invasion of property); *Loretto*, 458 U.S. at 426-27 (distinguishing permanent physical occupations of land from regulations on the private use of property).

The developers, moreover, misunderstand *Nollan* and *Dolan*. The premise of the challenge in both cases was that the takings were uncompensated. There was no contention the state could not properly exercise its right to appropriate the land use rights at issue in *Nollan* and *Dolan* if such takings were compensated; rather, the question presented was whether the state could permissibly achieve the same result without compensation by exacting the land use rights in exchange for granting a permit it was otherwise entitled to deny. *Nollan*, 483 U.S. at 834; *see Lingle*, 544 U.S. at 546-47.

Arguing that *Nollan* and *Dolan* provide a cause of action to facially invalidate land-use exactions, rather than to invalidate those exactions only where compensation is denied, the developers cite the Supreme Court's reliance on the unconstitutional conditions doctrine. As the Court stated in *Dolan*, however,

[4](...continued)
structures placed on private property or the easements at issue in *Nollan* and *Dolan*. It is particularly inappropriate to conclude the regulations effect a per se physical taking in circumstances like these in which waivers, alternate compliance methods, and cost-offsetting provisions are available. The developers may qualify for an alternative to the conveyance they claim is a per se taking.

-15-

under this doctrine, "the government may not require a person to give up a constitutional right–*here the right to receive just compensation* when property is taken for a public use" to receive an unrelated discretionary benefit. 512 U.S. at 385 (emphasis added). That is, the right a property owner cannot be forced to give up is the right to compensation; had the state justly compensated the plaintiffs in *Nollan* and *Dolan*, no Takings Clause violations could have even been alleged even under the unconstitutional conditions doctrine.

In essence, the developers attempt to turn *Nollan* and *Dolan* into loopholes in the *Lingle* rule that challenges to regulation as not substantially advancing a legitimate governmental interest are not appropriate under the Takings Clause. *Nollan* and *Dolan* do not authorize challenges to permitting decisions as alleged unconstitutional takings without first seeking compensation if the state has provided the means to seek compensation.

Finally, neither *Nollan* nor *Dolan* presented a facial challenge to a regulation and the ripeness concerns at issue here were not present in those cases. In *Nollan*, the landowners sought a construction permit for beachfront property that was granted only on the condition they allow a public easement over their land. *Nollan*, 483 U.S. at 828. The property owners litigated the propriety of the permit's condition in state court, including their claim that the condition constituted a taking. It was the state court ruling that the condition did not constitute a violation of the Takings Clause that the owners appealed to the U.S.

-16-

Supreme Court. *Id.* at 830-31. Likewise, in *Dolan*, the landowner applied for and obtained a development permit with a condition that a public easement be granted on the land. 512 U.S. at 379-80. Again, the owner litigated the claim in state court and obtained a ruling that the uncompensated appropriation did not constitute a taking before seeking a writ of certiorari from the Supreme Court. *Id.* at 383.

In both cases, the way in which the regulation would affect a particular piece of land was finally decided by the administrative body implementing the regulation, and the challenge was an as-applied challenge to the way the regulation interfered with the property. In any case, neither *Nollan* nor *Dolan* featured a discussion of the ripeness analysis in *Williamson County* and they cannot be the source to create a new breed of facial challenges that can be brought in federal court without regard to the *Williamson County* requirements.

## C. Prudential Ripeness

In the alternative, the developers argue this court may decline to apply the *Williamson County* ripeness requirements and we should do so here. Citing the Supreme Court's characterization of the *Williamson County* requirements as "prudential," the developers claim that because the dispute is sufficiently crystalized, this court should exercise jurisdiction in this case. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733-34 (1997).

-17-

This court declines the developers' invitation to ignore the ripeness requirements because the requirement to seek compensation prior to bringing suit retains an important purpose here. Assuming that the ordinance effectuates a taking of property, the County could decide to compensate the developers for the taking rather than abandon the ordinance. *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314, 317 (1987) (noting the government's choice, once a court has decided a taking has occurred, either to compensate or to abandon the interference with property rights). As discussed above, were the County to justly compensate the developers, even if the regulation constitutes a taking, there would be no constitutional concern. The *Williamson County* requirement that a plaintiff first seek and be denied compensation for a Takings Clause claim to be ripe therefore serves the important purpose of allowing the dispute to fully develop before a federal court intervenes in the County's administration of its land use regulations.

**D. Other Claims**

Concluding the developers' other constitutional claims were subsumed within the Takings Clause claims, the district court dismissed the other federal claims as unripe under this circuit's rule that *Williamson County* requirements apply equally to other constitutional claims based on the same facts as a Takings Clause claim. *See Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996). Having dismissed all of the developers' federal claims, the district court

-18-

also dismissed the developers' remaining state law claims under the supplemental jurisdiction statute. *See* 28 U.S.C. § 1367(c)(3). The developers have made no argument on appeal that the dismissal of the remaining claims based on the ripeness decision as to the Takings Clause claim was improper. Accordingly, the district court's decision to dismiss the remaining portions of the complaint is affirmed.

## V.  Conclusion

For the foregoing reasons, we **AFFIRM** the decision of the district court.