FLOYD,
Circuit Judge, concurring in part and dissenting in part:
I agree with the majority’s conclusion that Counts III through VII of Clayland Farm’s complaint are all ripe—as is Count I to the extent that it contests the validity of Talbot County’s alleged taking. Nonetheless, because- Clayland Farm failed to exhaust available state remedies, I would hold that Counts I and II are unripe to the extent that they seek a just compensation remedy. I respectfully dissent from the majority’s contrary conclusion as to these counts.
I.
A.
The Fifth Amendment prohibits takings without just compensation and takings for non-public use.[1]1 read Count I as presenting both a claim contesting the validity of an allegedly non-public use taking and, in the alternative, a claim for just compensation. See J.A. 34-35 (seeking to enjoin the *246 contested regulations on the theory that they “bear [no] substantial relationship to any legitimate police power,” but also seeking compensatory damages for an alleged taking done “without just compensation”).
With respect to federal just compensation claims, the Supreme Court has instructed that “if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.” Williamson Cty. Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). This exhaustion requirement makes sense. “The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation,” id. at 194, 105 S.Ct. 3108, and so an adequate state remedy for a public use taking eliminates the possibility of a Fifth Amendment violation.
Recognizing this point, we have held that when a state “opens its courts to inverse condemnation claims arising from regulatory takings,” and a plaintiff fails to seek just compensation through such procedures, the plaintiff “has not satisfied [the exhaustion] requirement.” Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d 404, 407 (4th Cir. 2007) (discussing Williamson Cty., 473 U.S. at 195, 105 S.Ct. 3108). Maryland has, without question, opened its courts for state inverse condemnation claims. See, e.g., Litz v. Md. Dep’t of Env’t, 446 Md. 254, 131 A.3d 923, 930-31 (2016). Nonetheless, Clayland Farm failed to advance such a claim in its complaint. As such, Count I’s federal just compensation claim is clearly unripe.
B.
The majority holds otherwise, based on a misreading of precedent. It does so by first announcing that “Count I is a facial challenge.” Maj. Op. at 244. Then, in response to Talbot County’s exhaustion argument against Clayland Farm’s just compensation claim, the majority cites Holliday Amusement for the proposition that “the state-litigation requirement for takings claims ‘does not apply to facial challenges to the validity of a state regulation.’ ” Id. at 244 n.6 (quoting Holliday Amusement, 493 F.3d at 407). This statement, although true, is irrelevant. It offers no suggestion whatsoever that a facial claim seeking just compensation for a valid taking—as opposed to a facial claim challenging the validity of a taking—is excused from the exhaustion requirement.
Thus, in my view, even if Count I states a facial just compensation claim, its facial nature would not exempt it from the exhaustion requirement. This view finds extensive support in the case law, both within and outside this Circuit. See, e.g., Wilkins v. Daniels, 744 F.3d 409, 417-18 (6th Cir. 2014) (“With respect to just-compensation challenges, while Williamson County’s first requirement may not apply to facial challenges, its second requirement—that plaintiffs must seek just compensation through state procedures—does.” (citations omitted)); Alto Eldorado P’ship v. Cty. of Santa Fe, 634 F.3d 1170, 1176-77 (10th Cir. 2011) (“Courts considering claims alleging a ... taking without just compensation, even when characterized as facial claims, have applied the second Williamson County requirement [of exhaustion.]” (citing Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo, 548 F.3d 1184, 1190 & n.13 (9th Cir. 2008); Holliday Amusement, 493 F.3d at 407; Cty. Concrete Corp. v. Twp. of *247 Roxbury, 442 F.3d 159, 168 (3d Cir. 2006))).
Indeed, there is good reason to treat facial claims challenging the validity of a taking and facial claims for just compensation differently in the exhaustion context. It is sensible to exempt the former category from any exhaustion requirement, because “no amount of compensation would render the taking constitutional [when] it was in excess of the government’s authority to take private property.” Alto Eldorado, 634 F.3d at 1176 n.3. In contrast, this justification does not apply to the latter category, because a state remedy can obviate the need for a facial, federal just compensation claim in the same way that it can obviate the need for an as-applied one. Thus, it is entirely proper to require Clay-land Farm to exhaust its state remedies before allowing it to proceed with its federal just compensation claim—regardless of whether the claim is labeled facial or as-applied.
C.
The majority attempts to further sidestep the exhaustion requirement by asserting that if it does apply, Talbot County has waived its right to invoke it by removing this case to federal court. According to the majority, Clayland Farm did what it needed to do by filing its complaint in state court. Therefore, “any claimed noncompliance with the state-litigation i'equirement would be excused because it was the County’s removal of the case that prevented the state court from , addressing Clayland Farm’s ‘inverse condemnation’ type claim contained in this case.” Maj. Op. at 245 n.6 (citing Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013)).
With respect to my colleagues in the majority, the waiver principle that we recognized in Sansotta is inapplicable here. In Sansotta, we waived the exhaustion requirement following the removal of a suit that alleged both a state inverse condemnation claim and a federal just compensation claim. 724 F.3d at 544-47. We reasoned that because the filing of such joint suits in state court was “exactly what San Remo Hotel[, L.P. v. City & Cty. of San Francisco, Cal., 545 U.S. 323, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005)] permits,” we would be “judicially condon[ing] manipulation of litigation” if we subjected such suits to the exhaustion requirement post-removal. Sansotta, 724 F.3d at 544-45.
The complaint in this case, however, falls outside the scope of Sansotta’s waiver reasoning. It alleges no state inverse condemnation claim, and is thus not the type of joint suit authorized by San Remo Hotel. Whereas the plaintiff in Sansotta alleged a state inverse condemnation claim that could have obviated the need for a court (federal or state) to reach its federal just compensation claim, Clayland Farm failed to do so. Thus, Clayland Farm’s federal just compensation claim is just as unripe in federal court as it was in state court, and so Clayland Farm should not be entitled to a waiver defense.
D.
Although I conclude that the just compensation claim of Count I is unripe, I agree with the majority that the alternative claim in Count I—a public use claim contesting the alleged taking’s facial validity—is ripe. See Holliday Amusement, 493 F.3d at 407 (“[T]he state procedures requirement does not apply to facial challenges to the validity of a state regulation.” (citations omitted)).
As explained above, there is no need to attach an exhaustion requirement to a claim that a taking was not for public use, because no amount of state compensation can cure the illegality of such a taking. *248 With this understanding in mind, at least three circuits have classified a public use claim as ripe even while classifying an adjoined just compensation claim as unripe for failure to exhaust. See Carole Media LLC v. N.J. Transit Corp., 550 F.3d 302, 308 n.3 (3d Cir. 2008); Rumber v. District of Columbia, 487 F.3d 941, 943-45 (D.C. Cir. 2007); Montgomery v. Carter Cty., Tenn., 226 F.3d 758, 768 (6th Cir. 2000). I would follow these courts’ approach here.[2]
II.
Next, I would dispose of Clayland Farm’s two due process claims in a manner similar to my recommended disposition of Count I.
A.
To elaborate, the substantive due process claim in Count III is analogous to the public use claim in Count I, in that both contest the validity of Talbot County’s regulations. Therefore, the former is exempt from the exhaustion requirement to the same extent that the latter is. See Kurtz v. Verizon N.Y., Inc., 758 F.3d 506, 514 (2d Cir. 2014) (“Substantive due process claims of arbitrary and capricious conduct, however, require only a showing of finality— there is no exhaustion requirement.” (citations omitted)). As such, I agree with the majority that Count III is ripe, notwithstanding Clayland Farm’s failure to exhaust its state remedies.
B.
In contrast, I would hold that the procedural due process claim in Count II is unripe.
Indeed, I am “persuaded by those courts holding that Williamson County”— including its exhaustion requirement—“applies to due process claims arising from the same nucleus of facts as a takings claim.” Kurtz, 758 F.3d at 515-16 (citing, inter alia, B. Willis, C.P.A., Inc. v. BNSF Ry. Corp., 531 F.3d 1282, 1299 n.19 (10th Cir. 2008); Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 961 (7th Cir. 2004)). “Such a rule finds support in Williamson County itself: if the only process guaranteed to one whose property is taken' is a post-deprivation remedy, a federal court cannot determine whether the state’s process is constitutionally deficient until the owner has pursued the available state remedy.” Id. at 516 (citation omitted). Additionally, this rule prevents plaintiffs from “circumventing] the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint.” Bigelow v. Mich. Dep’t of Nat. Res., 970 F.2d 154, 160 (6th Cir. 1992).
In this case, the procedural due process claim in Count II mirrors the just compensation claim in Count I, in that both seek identical compensation for Clayland Farm’s deprivation of development rights. Thus, applying the rule discussed above, I would hold that the exhaustion requirement governing the just compensation claim in Count I should likewise govern the procedural due process claim in Count II. Therefore, Clayland Farm’s non-compliance with the exhaustion requirement renders Count II unripe.
III.
Despite my disagreement with the majority on the above-described points, I am *249 happy to concur in their holding that Counts V and YI—Clayland Farm’s state law claims—are ripe.
I also agree that Count IVs conspiracy claim and Count VII’s injunctive relief claim are ripe, albeit only to the extent that they are premised on remedying legal violations that underlie claims that are themselves ripe.
IV.
The majority today remands to the district court just compensation and procedural due process claims premised on alleged government takings for which Maryland has had no opportunity to offer redress. In doing so, the majority leaves the district court with the unenviable task of entertaining claims premised on incomplete government action. See Williamson Cty., 473 U.S. at 195, 105 S.Ct. 3108 (explaining, in the just compensation context, that “the State’s action is not ‘complete’ in the sense of causing a constitutional injury ‘unless or until the State fails to provide an adequate post-deprivation remedy for the property loss’” (quoting Hudson v. Palmer, 468 U.S. 517, 532 n.12, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984))). Because I cannot agree that such claims are ripe, I respectfully dissent from the majority’s disposition of Clayland Farm’s just compensation and procedural due process claims.

. The Fifth Amendment of the U.S. Constitution provides: "[N]or shall private property be taken for public use, without just compensation.” U.S. Const. amend. V.

. Although the typical remedy for a non-public use taking is an injunction, Kelo v. City of New London, 545 U.S. 469, 475-76, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), I would also approve compensatory relief designed to remedy any past injuries resulting from such a taking. See Theodorou v. Measel, 53 Fed. Appx. 640, 642 (3d Cir. 2002) (affirming award of compensatory damages for property damage and emotional distress flowing from a township’s completed private taking).