FILED
United States Court of Appeals
Tenth Circuit

March 15, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

MARCY BRITTON,

     Plaintiff - Appellant,

v.

MAYOR TIM KELLER; DANNY
NEVAREZ; CITY OF ALBUQUERQUE,

     Defendants - Appellees.

No. 20-2054
(D.C. No. 1:19-CV-01113-KWR-JHR)
(D. New Mexico)

_____

**ORDER AND JUDGMENT***
_____

Before **MATHESON**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **McHUGH**, Circuit Judge.

_____

The City of Albuquerque, New Mexico (the "City"), has a "trap, neuter, release" ("TNR") program for feral cats. The program involves catching, vaccinating, and sterilizing feral cats, then releasing them. The feral cats are supposed to be released where they were caught, but Marcy Britton alleges they are sometimes released elsewhere in the city. This, she claims, has resulted in a colony of feral cats on or near her property. She sued the City, the mayor of the City, Tim Keller, and the director of the

---

     * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

City's Animal Welfare Department, Danny Nevarez, under 42 U.S.C. § 1983, alleging the TNR program has worked a taking of her property. She also sued under the New Mexico Constitution and state tort law. The district court dismissed her operative, amended complaint, holding (1) the TNR program could not constitute a taking as a matter of law; (2) Ms. Britton had not alleged sufficient facts to demonstrate a taking even if it could; and alternatively holding (3) the individual defendants were entitled to qualified immunity. The district court also declined to exercise supplemental jurisdiction over the state law claims. Ms. Britton appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. Factual History[1]

The City operates a TNR program by which feral felines are trapped, sterilized, and vaccinated. Although they are supposed to be released where originally trapped, cats are sometimes released at a "new location unfamiliar to the cat regardless of whether the appropriate care or sustenance exists at that location and without regard to impacts to property values, or damage to private property." App. at 7. Mr. Keller "has directed the TNR program to continue" and Mr. Nevarez "orders that the cats continue to be dumped." *Id.*

_____

[1] Because this appeal concerns a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the facts are those alleged in the operative complaint, which are presumed to be true in this procedural posture. *See Smallen v. The W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020).

Ms. Britton has "a real property interest in certain real estate located in the City." *Id.* at 6. The feral cats were released "in the vicinity of the property in question." *Id.* at 132 (quoting Ms. Britton's response to the motion to dismiss, *id.* at 97). The cats then established a feral cat colony "residing near, or at times, on, [Ms. Britton's] property," risking her exposure to diseases carried by the cats as well as damage to her property from the cats' excrement and urine. *Id.* (quoting *id.* at 97). The feral cat colony near or on Ms. Britton's property has contained "dozens, if not tens of dozens, of feral cats" over time, which enter or soil her property. *Id.* at 7. On one occasion, a party preparing to make an offer to purchase Ms. Britton's property decided not to do so because of the feral cats. Ms. Britton believes the "property will now appraise for less tha[n] she purchased [it] for as a result of" the TNR program. *Id.* at 7–8.

## B. Procedural History

Ms. Britton filed suit in the United States District Court for the District of New Mexico. Her amended complaint contained two counts. In Count I, brought under 42 U.S.C. § 1983, she alleged the TNR program worked a taking of her property in violation of the United States Constitution. Ms. Britton also argued in Count I that this conduct violated the New Mexico Constitution. In Count II, she alleged trespass and nuisance under New Mexico tort law. The City moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] It argued Ms. Britton had not alleged facts sufficient to show a

---

[2] All relevant documents were jointly filed by the three defendants. We attribute arguments common to all defendants to the City.

3

violation of the Takings Clause or to show the individual defendants were liable personally for the violation, and that the individual defendants were entitled to qualified immunity. It also argued the state law claims should be dismissed on sovereign immunity grounds and because the facts were insufficient to show a nuisance. Ms. Britton opposed the motion.

The district court granted the motion to dismiss. It held "feral cat colonies do not constitute government occupation of [Ms. Britton's] property," and the government's actions in administering the TNR program could not legally constitute a taking because any injury "was incidental" to the exercise of "police powers" and did not take the "property for public use." *Id.* at 133–4. Employing the framework of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), the district court alternatively held that Ms. Britton's allegations did not state a plausible regulatory taking because "the character of the regulation outweighs any economic impact, even if severe," and that her allegations did not "raise a plausible claim that government actions resulted in a reduction in value of her property." App. at 138. Additionally, the district court held the individual defendants were entitled to qualified immunity because Ms. Britton had not sufficiently pleaded their personal involvement or shown any constitutional violation was clearly established. Finally, the district court declined to exercise supplemental jurisdiction over the state law claims. The district court entered judgment dismissing the § 1983 claim with prejudice and the state law claims without prejudice. Ms. Britton timely filed a notice of appeal.

## II.    DISCUSSION

We review de novo a district court's grant of a motion to dismiss, taking as true the well-pleaded allegations in the complaint. *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020).

### A.    Legal Background

The Fifth Amendment to the United States Constitution proscribes taking of private property "for public use, without just compensation." U.S. Const. amend. V; *see also Alto Eldorado P'ship v. Cnty. of Santa Fe*, 634 F.3d 1170, 1173 (10th Cir. 2011) (noting that the Takings Clause applies against state and municipal entities via incorporation through the Fourteenth Amendment). "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

But "[r]egulation of private property may be so onerous that it violates the Takings Clause of the Fifth Amendment and requires the government to provide compensation." *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1208 (10th Cir. 2009). A *per se* regulatory taking occurs where "government requires an owner to suffer a permanent physical invasion of her property" or a regulation "completely deprive[s] an owner of '*all* economically beneficial us[e]' of her property." *Lingle*, 544 U.S. at 538 (quoting *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1019 (1992) (emphasis in *Lucas*, second alteration in *Lingle*)).

Otherwise, a regulation may create a taking under standards the Supreme Court set forth in *Penn Central*. *See Ramsey Winch*, 555 F.3d at 1208. "The major factors under the

*Penn Central* inquiry are (1) '[t]he economic impact of the regulation on the claimant,' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action.'" *Id.* at 1210 (quoting *Penn Cent.,* 438 U.S. at 124) (alteration in original, italicization added). "The *Penn Central* inquiry focuses on the magnitude of the economic impact of the regulatory action and the extent of the regulation's interference with property rights to determine if the regulatory action constitutes a taking." *Alto Eldorado P'ship*, 634 F.3d at 1174.

### B. Application

We first conclude the district court correctly determined feral cats cannot be the instrumentality of a government physical occupation for purposes of a paradigmatic taking. Because this means Ms. Britton can succeed only if she has properly alleged a regulatory taking, we then focus on Ms. Britton's argument regarding the district court's *Penn Central* analysis. Ms. Britton argues the district court erred in performing a *Penn Central* analysis on a motion to dismiss. In her view, because the *Penn Central* analysis is fact specific, a district court must wait for the factual development that occurs in discovery before undertaking it. Ms. Britton is incorrect.

### 1. Paradigmatic Taking

A government invasion of property constitutes a paradigmatic taking. *Lingle*, 544 U.S. at 537. But our precedent bars Ms. Britton from asserting that the cats themselves constitute a physical government invasion on her property. *See Mountain States Legal Found. v. Hodel*, 799 F.2d 1423, 1428 (10th Cir. 1986) (en banc) (rejecting the "argument that . . . wild horses are, in effect, instrumentalities of the federal government

6

whose presence constitutes a . . . governmental occupation of the Association's property"). While the cats may have entered Ms. Britton's property, the government did not; nor did the government direct the cats to do so. Therefore, we read Ms. Britton's complaint as advancing some species of regulatory taking claim.

The cases Ms. Britton cites on this point do not help her. She asks us to liken her claim to that in *Fallini v. United States*, 56 F.3d 1378 (Fed. Cir. 1995), but that case explicitly relies on our holding in *Mountain States* that wild horses are not instrumentalities of the United States government. *Id.* at 1383 (holding that the plaintiffs' claim was time-barred because it must have accrued from governmental action—the passing of the legislation at issue—not the actions of the horses, who were "not agents of the Department of the Interior"). *Colvin Cattle Co. v. United States*, 468 F.3d 803 (Fed. Cir. 2006), the other case Ms. Britton raises, is equally unhelpful. There, the plaintiff—a private rancher—sued the United States, claiming the Bureau of Land Management's (BLM) grant of grazing rights to another rancher and its failure to remove wild horses from a parcel of public land constituted a taking of the plaintiff's stockwatering rights on that land. *Id.* at 808–09. In particular, the plaintiff claimed the BLM had failed to prevent the other rancher's domesticated cattle as well as wild horses from infringing on his water rights. *Id.* With respect to the cattle, the Federal Circuit rejected the claim both because the United States could not be held responsible for a private rancher's incursion on the plaintiff's water rights and because the BLM had required that rancher to provide his own water. *Id.* at 809. As for the wild horses, the court held they were "outside the government's control" so "they cannot constitute an instrumentality of the government

7

capable of giving rise to a taking." *Id.* (citing another Federal Circuit case which cited *Mountain States*). The feral cats here are likewise beyond the City's control and *Colvin* provides no support for Ms. Britton's claim.[3]

To be sure, the City has certain responsibilities related to the feral cats at issue in this case. *See* N.M. Stat. Ann. § 77-1-12 (2009). But *Mountain States* teaches this sort of regulatory authority over certain species does not make those animals instrumentalities of the government. 799 F.2d at 1428. There, the claim was that the Secretary of the Interior was required to remove wild horses from private lands on request but had failed to do so. *Id.* at 1424–25. We never addressed whether the Secretary was, in fact, acting unlawfully in failing to remove the wild horses. We simply determined there had been no taking. *Id.* at 1431. We similarly take no position as to whether the City is fulfilling its role under New Mexico law through the TNR program. That issue is not before us; the question is whether the City has violated the United States Constitution's Takings Clause, not the laws of New Mexico. We hold that it has not.

---

[3] We note that Ms. Britton has waived any argument that cats can be distinguished from the horses at issue in *Mountain States*, because cats are traditionally domestic animals while the horses were specifically defined by statute as wild. Ms. Britton's opening brief does not use the words "domestic" or "domesticated," nor does it use the term "wild animal" or otherwise suggest the cats are not wild animals. And she does not ask us to distinguish *Mountain States* on this ground. Although Ms. Britton does raise the domestic/wild distinction in reply, that is too late. The argument is waived. *See United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019) ("In this Circuit, we generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived.").

In doing so, we have no reason to—and therefore do not—pass on Ms. Britton's state law claims for trespass and nuisance. Those claims were premised on supplemental jurisdiction and the district court properly declined to exercise jurisdiction over them (and dismissed them without prejudice) when it determined the federal takings claim could not succeed. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quotation marks omitted)). If the TNR program is unlawful under New Mexico law, as Ms. Britton suggests, she may press her claims in a court of competent jurisdiction. We hold only that any remedy she may have for the City's alleged violations of N.M. Stat. Ann. § 77-1-12 is not found in the Takings Clause of the United States Constitution.

## 2. Regulatory Taking

At oral argument, Ms. Britton suggested she might be advancing a *per se* regulatory taking theory. A *per se* regulatory taking, however, requires Ms. Britton to show either "a *permanent* physical invasion of her property" or that the regulation deprives her of "*all* economically beneficial use of her property." *Id.* at 538 (internal quotation marks omitted, first emphasis added). Ms. Britton has not alleged the cats permanently occupied her property. Nor has she alleged they deprived it of all economically beneficial use. *See* App. at 7–8 (alleging Ms. Britton's "property will now appraise for less tha[n] she purchased the property for" but not that it is valueless); Oral Argument at 1:44–1:54 (agreeing Ms. Britton was not arguing her property was deprived

9

of economically beneficial use). She therefore cannot succeed on a *per se* regulatory taking theory.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1177 (10th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). "The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff may obtain relief." *Llacua*, 930 F.3d at 1177.

Thus, under the *Twombly* and *Iqbal* pleading standard, Ms. Britton needed to plead facts sufficient to plausibly suggest she could show a non-*per se* regulatory taking under *Penn Central*. Further factual development is unnecessary because the allegations in the amended complaint are taken to be true. If the factual content in the amended complaint does not allow at least a plausible inference that a regulatory taking occurred under *Penn*

10

*Central*, dismissal is appropriate. *See Taylor v. United States*, 959 F.3d 1081, 1087 (Fed. Cir. 2020) (concluding, in reviewing a motion to dismiss a takings claim, "that the [plaintiffs'] regulatory-taking claim cannot pass muster under [the *Penn Central*] standards, even without further factual inquiry").[4] Simply put, the district court did not err in assessing whether Ms. Britton's factual allegations were sufficient to state a regulatory taking claim under the governing legal standard.

Usually, we would proceed to consider the district court's analysis of Ms. Britton's amended complaint to determine whether the dismissal was, in fact, appropriate. That is unnecessary here, however, because Ms. Britton has forfeited the argument that her amended complaint could survive if the district court correctly performed the *Penn Central* analysis at the motion to dismiss phase. To the extent Ms. Britton gestures on appeal toward an argument that the district court's *Penn Central* analysis was wrong rather than merely premature, she does so insufficiently to preserve the issue for our review. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are

---

[4] The other circuit courts to have encountered this question, albeit in unpublished decisions, are all in agreement that the *Penn Central* analysis can be conducted at the pleading stage. *See Sierra Nevada SW Enters., Ltd. v. Douglas County*, 506 F. App'x 663, 666–67 (9th Cir. 2013) (unpublished) (applying the *Iqbal* pleading standard to a takings claim and finding it wanting under *Penn Central*); *Yur-Mar, L.L.C. v. Jefferson Par. Council*, 451 F. App'x 397, 400–01 (5th Cir. 2011) (unpublished) (same); *see also Acorn Land, LLC v. Baltimore Cnty.*, 402 F. App'x 809, 816–17 (4th Cir. 2010) (unpublished) (determining the plaintiff had met the *Iqbal* pleading standard when considering the *Penn Central* factors). We are unaware of any circuit court to have held to the contrary, and Ms. Britton does not direct our attention to any such decision.

inadequately presented, in an appellant's opening brief."). Ms. Britton's opening brief contains only one paragraph arguably on this point, consisting of three sentences. She argues her amended complaint alleged an unreasonable "interfere[nce] with her property interests" through the creation of the feral cat colony; that "the damage and blighting of her property" was in line with opening flood gates to release water; and that the district court's decision was therefore wrong. Appellant Br. at 12. At no point does she recite or attempt to apply the *Penn Central* factors.

And Ms. Britton's only citation on this point, *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23 (2012), does not help her. There the Supreme Court considered a "temporary physical invasion by government." *Id.* at 38. The Court concluded that temporary flooding could be a taking, but did not conclude such flooding necessarily constituted a taking. *Id.* at 34, 38. Rather, it remanded for consideration of a multifactor balancing test applicable to temporary physical invasions, including many of the *Penn Central* factors. *Id.* at 38–41. Thus, that case establishes only that a balancing analysis must be performed even though the invasion is temporary. The district court here did perform a *Penn Central* analysis, so *Arkansas Game & Fish Commission* is inapposite. Ms. Britton has not properly presented for our review any argument that the district court's application of the *Penn Central* analysis is erroneous.

Ms. Britton next contends that the facts alleged are not themselves "fantastic," Reply Br. at 5 & n.1 ("Appellant was not making allegations akin to a visit from little green men from Mars or adventures in time travel" (citing *Iqbal*, 556 U.S. at 696 (Souter, J., dissenting)), and that the *Penn Central* standard is fact-intensive. True enough, but

12

these points do not show the district court erred in evaluating whether Ms. Britton's amended complaint, taken as true, plausibly showed a regulatory taking.[5] Accordingly, her appeal cannot succeed.

### III. CONCLUSION

We **AFFIRM**.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

---

[5] "When a defendant raises the qualified-immunity defense, the plaintiff must . . . establish (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established at the time of the defendant's conduct." *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020). Because Ms. Britton has not demonstrated the district court erred in concluding the TNR program did not implicate the Takings Clause, the individual defendants are also entitled to qualified immunity under the first prong of that analysis.